# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
### AT LOUISVILLE

RICKEY CALLOWAY                                                    PETITIONER

v.                                         CIVIL ACTION NO. 3:13-CV-75-S
                                           CRIMINAL ACTION NO. 3:07-CR-25-S-2

UNITED STATES OF AMERICA                                          RESPONDENT

## FINDINGS OF FACT
## CONCLUSIONS OF LAW
## AND RECOMMENDATION

## INTRODUCTION

Rickey Calloway is a federal prisoner. In April of 2009, a jury seated in the Western

District of Kentucky convicted Calloway on counts 1-6 of a third superseding indictment[1] that

charged Calloway with various drug and firearm related offenses.[2] Following conviction, the

District Court sentenced Calloway to life imprisonment.[3] The Sixth Circuit affirmed Calloway's

---

[1] DN 194, Third Superseding Indictment.

[2] Count 1 of the indictment charged Calloway along with his co-defendants Ronald E. Jefferies and Luciana Meadoweal with a conspiracy to possess with intent to distribute 5 kg or more of cocaine in violation of 21 U.S.C. §§841(a)(1), (b)(1)(A)(ii) and 846. Count 2 of the indictment charged Calloway and Jefferies with an attempt to possess with intent to distribute 5 kg or more of cocaine between June 8 and June 14 of 2006, in violation of the aforementioned criminal statutes. Count 3 charged Calloway and Jefferies with aiding and abetting one another and others to travel in interstate commerce from Kentucky to Texas to carry on an unlawful activity, possession with intent to distribute cocaine in violation of 18 U.S.C. §1952(a)(1), 1952(a)(3) and 2. Count 4 charged Calloway, Jefferies and Meadoweal with an attempt to possess with intent to distribute 5 kg or more of cocaine between Dec. 16 and 18, 2006, in violation of 21 U.S.C. §§841(a)(1), 841(b)(1)(A)(ii) and 846. Count 5 charged these same three individuals with aiding and abetting one another to travel interstate commerce from Kentucky to Texas to carry on an unlawful activity: possession with intent to distribute cocaine between Dec. 16 and 18, 2006, in violation of 18 U.S.C. §§1952(a)(1), 1952(a)(3) and 2. Count 6 charged Calloway alone with being a convicted felon in possession of a firearm in violation of 18 U.S.C. §§922(g)(1), 924(a)(2) and 924(e)(1).

The jury acquitted Calloway on the charges contained in counts 7 and 8 of the third superseding indictment. Count 7 charged Calloway and Jefferies with aiding and abetting one another on Feb. 5, 2007, to possess with intent to distribute more than 5 grams of "crack" cocaine in violation of 21 U.S.C. §§841(a)(1), 841(b)(1)(B) and 2. Count 8 charged Jefferies and Calloway with aiding and abetting one another on the same date to possess with intent to distribute 500 grams or more of cocaine in violation of the same statutes cited in count 7. Count 9, the final count of the indictment, sought the forfeiture of various funds contained in bank accounts held by Jefferies, Calloway and Advance Realty Group, LLC, along with various amounts of cash and two firearms (DN 194, third superseding indictment).

[3] DN 252, Judgment of Conviction. Calloway was sentenced to a total term of life as to counts 1, 2, 4 and 6, to be served concurrently with a 60-month sentence as to each of count 3 and 5 of the third superseding indictment. Id.

conviction on direct appeal over his challenge to the denial of his motion to suppress, the admission of certain evidence at trial and the claim that his sentence was unconstitutional.[4]

Calloway has now filed a motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. §2255.[5] In his motion, Calloway raises six grounds for relief. He contends in ground 1 that the search warrant issued on Dec. 19, 2006, for his home at 7219 Oakburn Drive in Louisville, Kentucky, was issued over the forged signature of Jefferson Circuit Judge Geoffrey Morris so as to require the suppression of all items seized that were introduced against him at trial in violation of due process and *Brady v. Maryland*, 373 U.S. 83 (1963).

Calloway argues in ground 2 that venue for his trial was improper in the Western District of Kentucky. In ground 3 he argues that he was deprived of a fair trial and his right to effective assistance of counsel when his trial attorney failed to obtain an alibi jury instruction. Calloway argues in his fourth ground that he was denied effective assistance of counsel prior to and during trial in more than 20 different respects. Ground 5 alleges that Calloway's personal property was seized by law enforcement officers without just compensation in violation of the Fifth Amendment. Finally, Calloway argues in ground 6 that he was denied his Sixth Amendment right to a jury trial when the District Court enhanced his sentence as a career offender under 21 U.S.C. §841(b)(1)(A) based upon facts not found by the jury.

The United States has filed a response to Calloway's motion to vacate.[6] Calloway has filed a reply.[7] Accordingly, the matter is ripe for consideration.

---

[4] DN 321, *United States v. Calloway, et al*, Case Nos. 09-5861, 09-5862, 09-5863 (6th Cir. Jan. 24, 2012). The Sixth Circuit panel likewise affirmed the convictions and sentences imposed on Jefferies and Meadoweal, as well.
[5] DN 364, Motion to Vacate.
[6] DN 405, Response.
[7] DN 410, Reply.

# FINDINGS OF FACT

The nature of the charges and proof offered against Calloway and his co-defendants at trial is well stated in the decision of the Sixth Circuit panel on direct appeal in *United States v. Ronald E. Jefferies, Luciana Denise Meadoweal, and Rickey Calloway*, 457 Fed.Appx. 471 (6th Cir. 2012), *cert. den'd*, *Meadoweal v. United States*, 132 S.Ct. 2418 (2012). In *Jefferies*, the Sixth Circuit considered the consolidated appeals of Calloway and his two co-defendants. The panel at the outset of its decision summarized matters as follows:

> On January 21, 2009, a grand jury returned a nine count superseding indictment charging Jefferies, Calloway, and Meadoweal with various criminal offenses related to a drug trafficking operation. Count One charged all three defendants with conspiracy to possess with intent to distribute more than five kilograms of cocaine in violation of 21 U.S.C. § 846. Count Four charged all three defendants with possession with intent to distribute in violation of 21 U.S.C. § 841(a)(1), and Count Five charged all three defendants with traveling in interstate commerce to commit their drug crimes in violation of 18 U.S.C. §§ 1952(a)(1) and (a)(3). These substantive counts related to cocaine found in the trunk of a car that Meadoweal drove to Houston.
>
> Counts Two and Three charged Calloway and Jefferies with violations of 21 U.S.C. § 841(a)(1) and 18 U.S.C. §§1952(a)(1) and 1952(a)(3) related to a drug run that Calista Shirley, who is not a party in this case, made to Houston. Counts Seven and Eight charged Calloway and Jefferies with possession of more than five grams of crack and more than 500 grams of cocaine with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1). These two counts related to drugs found at a "stash house" that Jefferies rented on Middle Lane in Louisville, Kentucky. Count Six charged Calloway alone with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Count Nine, seeking forfeiture, is not relevant to this appeal.
>
> A jury found Calloway guilty on Counts One through Six. The jury found Meadoweal guilty on Counts One, Four and Five. Instead of going to trial, Jefferies pled guilty to Counts One, Seven and Eight, but reserved the right to appeal the denial of his motion to suppress. The district court sentenced Calloway to life in prison, Meadoweal to 120 months of imprisonment, and Jefferies to 204 months of imprisonment.

**A.**

The facts of this drug conspiracy case are complex. In late 2006, Jefferies took a Lincoln Town Car to an auto shop in Louisville, Kentucky to have a hidden compartment installed in the trunk. Louisville police were tipped off and obtained a warrant to place a GPS tracking device on the car. The police posed as firemen needing to investigate a gas leak in the auto shop, entered the premises, and placed a GPS device on the Lincoln, without the knowledge of the shop's owner.

After the hidden compartment was installed and the Lincoln returned to Jefferies, police tracked the car to a house on Middle Lane which Jefferies, police later discovered, was renting. Police also visually observed the Lincoln at Middle Lane. The police further tracked the Lincoln to a house that Jefferies owned on Pinnacle Lane and to a house owned by Calloway on Oakburn Lane. The police tracking the Lincoln took particular note when the vehicle went southbound, leaving Louisville; they suspected that the driver had left town to complete a drug run. The Lincoln traveled to Sugar Land, Texas, near Houston, stayed less than 24 hours, and then began to return north. At that point in Louisville, a number of officers assembled and waited for the Lincoln to return. However, the Lincoln never returned to Louisville.

Rather, on December 18, 2006, when the Lincoln was returning from Sugar Land, a Louisiana police officer noticed that the Lincoln darted "evasive[ly]" into the right lane upon seeing him. The officer, further observing that the Lincoln was following the car in front of it too closely and had a license plate ring that partially obstructed the license plate, pulled over the vehicle. Meadoweal was behind the wheel.

Meadoweal claimed she had been visiting San Antonio and denied consent to search the vehicle. Another officer ran a canine around the car to check for narcotic odors, and the canine alerted on the trunk—indicating a positive odor of narcotics. The officers suspected a false compartment in the trunk but were unable to open it. After bringing the Lincoln to a substation and opening the false compartment, officers found approximately nine kilograms of cocaine smeared with mustard to mask the smell, plus $80,000. Portions of the interaction between the officers and Meadoweal were captured on video and played for the jury at trial.

Before bringing the car to the substation, officers noticed that Meadoweal had been talking on the phone with "Rick" (Calloway's first name), as that name appeared on Meadoweal's cell phone. When asked who Rick was, Meadoweal responded that he was her boyfriend. Cell phone records introduced at trial showed that Calloway had traveled south from Louisville to the Houston area on the same day as Meadoweal and that the two had spoken on the phone while traveling to and returning from Sugar

Land. On the morning of Meadoweal's arrest, Calloway also placed several phone calls to Jefferies.

After being arrested, Meadoweal attempted to contact Calloway from jail. Meadoweal called her daughter and asked her if she knew Rick's number. Her daughter provided Meadoweal with the number 502-457-2630—the same number that had been tracked moving south from Louisville to the Houston area—so that her daughter could contact Calloway. Meadoweal asked her daughter to call Calloway and give him four numbers of bail bondsmen. From jail, Meadoweal also talked to her brother to ask that Calloway pay her bond of $24,000.

## B.

The Louisville police officers who had placed the tracking device on the Lincoln soon learned that the driver had been arrested in Louisiana for drug possession. The officers then obtained and executed a search warrant for Calloway's house on Oakburn Lane. In the pocket of a jacket in Calloway's house, the officers recovered a receipt from "Love's Country Store," located about 30 miles from where Meadoweal was pulled over, and dated December 18, 2006, the same day that Meadoweal was arrested. Written on the back of this receipt were the four numbers of the bail bondsmen that Meadoweal had asked that Calloway contact. In the same jacket, officers found a Western Union receipt for $24,060—the amount of Meadoweal's bond plus fees. The officers also recovered $27,480 in cash and two firearms from Calloway's house, as well as a luggage tag on which the number 502-457-2630 was written.

Also in Calloway's house, officers discovered the driver's license of Calista Shirley. Shirley had been arrested outside of Houston in June of 2006 for possessing thirty kilograms of cocaine in her trunk. After Shirley's arrest, Calloway paid for Shirley's legal representation. Shirley was subsequently convicted of possession of more than five kilograms of cocaine with intent to distribute.

Officers arrested Calloway after searching his house. From jail, Calloway called Jefferies and instructed him to empty an account they held together. Shortly thereafter, a man identifying himself as Jefferies withdrew nearly $35,000 from the account, nearly emptying it.

## C.

Having arrested both Meadoweal and Calloway, and having searched Calloway's residence, officers then focused on Jefferies and the house on Middle Lane—which they suspected was the stash house. The officers suspected this residence because a neighbor had seen both Calloway's

Hummer and the Lincoln parked on Middle Lane, and officers had independently observed the Lincoln on Middle Lane, both visually and by using the GPS. The officers made contact with a neighbor, who promised to call when Jefferies returned to Middle Lane. When the neighbor called on February 5, 2007, police rushed to the Middle Lane residence but Jefferies had already left. Police soon found Jefferies at a nearby liquor store. Jefferies denied having just been near Middle Lane and twice denied knowing anything about Middle Lane. The officers then brought out their K-9, which alerted for a positive drug odor on Jefferies's clothing. After arresting Jefferies, officers did not find any drugs on his person, but they did find $6,500 in cash.

The officers then obtained and executed search warrants for Jefferies's vehicle and the Middle Lane residence. Inside the Middle Lane house, officers found crack and powder cocaine, several bags and wrappers with cocaine residue, digital scales, a pressing machine to make cocaine bricks, and adulterants used to dilute cocaine. The officers also found a Christmas card addressed to "Rickey," as well as a rental agreement for the Middle Lane property in Jefferies's name.

*United States v. Jefferies, et al.*, 457 Fed. Appx. at 473-475.

Based on the above proof, the jury convicted both Calloway and Meadoweal. Calloway, as noted, was convicted on counts 1 through 6, and acquitted on counts 7 and 8 of the third superseding indictment.[8] Co-defendant Meadoweal was convicted on all of the charged counts that involved her, counts 1, 4, and 5.[9] Jefferies pled guilty prior to trial to counts 1, 7 and 8 pursuant to a conditional plea agreement that allowed him to appeal from the ruling of the District Court that denied his motions to suppress.[10]

The District Court held a sentencing hearing for Calloway and Meadoweal on July 17, 2009.[11] Prior to the hearing, Calloway in his presentencing memorandum,[12] objected to the possible imposition of a life sentence pursuant to 21 U.S.C. §841(b)(1)(A)(ii).[13] Calloway

---

[8] DN 252, Calloway Judgment of Conviction.
[9] DN 253, Meadoweal Judgment of Conviction
[10] DN 217, Jefferies Plea Agreement, p. 6.
[11] DN 279, transcript of sentencing.
[12] DN 246, Presentence Memorandum.
[13] Id., p. 4-5.

argued that imposition of a mandatory life sentence would violate his constitutional right to a jury trial under the Sixth Amendment where the jury did not find beyond reasonable doubt that Calloway had been convicted of the prior felony offenses identified in the §851 notice of the United States.

The District Court rejected this argument and instead concluded that the mandatory life sentence provisions of the statute did apply to Calloway.[14] It consequently sentenced Calloway to life imprisonment. This sentence was then affirmed by the Sixth Circuit on direct appeal along with the convictions and sentences received by co-defendants Jefferies and Meadoweal as discussed above. *United States v. Jefferies, et al.*, 457 Fed. Appx. 471 (6th Cir. 2012), *cert. den'd*, *Meadoweal v. United States*, 132 S.Ct. 2418 (2012).

Calloway later filed a motion for a new trial based on a claim that he had newly-discovered evidence that the signature of the state court judge on the search warrant for his home at 7219 Oakburn Drive had been forged.[15] The District Court denied Calloway's motion because the alleged forgery was not "newly discovered evidence" where Calloway acknowledged that he had brought the issue to the attention of his attorney prior to trial.[16] Calloway took an appeal from the order that denied his motion for a new trial.[17] The Sixth Circuit in a separate opinion affirmed the decision of the District Court that Calloway's claim of forgery was not newly-discovered evidence.[18] Calloway then proceeded to bring his current motion to vacate pursuant to 28 U.S.C. §2255.[19]

---

[14] DN 279, Tr., p. 19.
[15] DN 328, Mot. for New Trial.
[16] DN 355, Memo. Opin. (citing *United States v. O'dell*, 805 F.2d 637, 640 (6th Cir. 1986) (quoting *United States v. Barlow*, 693 F.2d 954, 966 (6th Cir 1982), *cert. den'd*, 461 U.S. 945 (1983)).
[17] DN 356, Notice of Appeal.
[18] DN 382, *United States v. Calloway*, App. No. 13-5044 (6th Cir. Oct. 24, 2013).
[19] DN 364, Mot. to Vacate.

# CONCLUSIONS OF LAW

The first matter to be addressed is the standard or review that applies when a federal prisoner files a motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. §2255. A motion to vacate brought by a federal prisoner pursuant to 28 U.S.C. §2255 must set forth one or more of three possible grounds for relief. *See United States v. Doyle*, 631 F.3d 815, 817-18 (6th Cir. 2011). The motion may allege an error of constitutional magnitude, allege that the defendant's sentence fell outside the statutory limits, or maintain that a fundamental error of fact or law occurred that rendered the entire criminal proceedings invalid. *Id.* (citing *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001)). *See also, United States v. Addonizio*, 442 U.S. 178, 185-86 (1979).

A §2255 petitioner will be procedurally barred from re-litigating a claim that he or she previously raised or has attempted to raise on direct appeal. *See Stephan v. United States*, 496 F.2d 527, 528-29 (6th Cir. 1974). A §2255 motion is not a means for federal prisoners to obtain a "second bite of the apple" on issues that were unsuccessfully raised on appeal or issues that could have been raised. *See* Dupont *v. United States*, 76 F.3d 108, 110 (6th Cir. 1996) ("A §2255 motion may not be used to re-litigate an issue that was raised on appeal absent highly exceptional circumstances."). Consequently, a §2255 petitioner who hopes to re-litigate a previously considered issue must persuade the court that truly exceptional circumstances justify re-examining an issue already resolved against him or her. *Id.*

A §2255 petitioner also may not raise issues by way of a motion to vacate that should have been raised on direct appeal, but were not. A petitioner in such a situation has defaulted the unraised issues unless he or she is able to show both cause for the omitted issue and actual prejudice in the form of a reasonable probability of a different outcome on appeal had the issue

been raised.  *See United States v. Frady*, 456 U.S. 152, 164-65 (1982).  The Sixth Circuit has adhered to this cause and prejudice test in §2255 cases.  *Murr v. United States*, 200 F.3d 896, 900 (6th Cir. 2000) ("It is well-settled law that failure to raise an argument at trial or on direct appeal is waived on collateral review under §2255, absent the showing of both cause and actual prejudice.").

**Ineffective Assistance of Counsel Standard.**

The Sixth Amendment guarantees that in all criminal prosecutions the accused shall enjoy the right to assistance of counsel for his defense. U.S. Const. Amend VI.  In *McMann v. Richardson*, 397 U.S. 759, 771 (1970), the Supreme Court set out the derivative principle that all "defendants facing felony charges are entitled to the effective assistance of competent counsel." *See McElrath v.Simpson*, 595 F.3d 624, 630 (Ky. 2010).  Subsequently, in *Strickland v. Washington*, 466 U.S. 668, 686 (1984), the Supreme Court established the often-cited, two-part, benchmark test for evaluating a claim of ineffective assistance of counsel.  *Id.*

First, the defendant, or movant in this case, must show that the performance of his or her attorney was deficient, or objectively unreasonable, in light of the then prevailing professional norms.  *Hodges,* 727 F.3d at 545 ("The Supreme Court has explicitly approved using ABA Guidelines on attorney performance in effect at the time of a defendant's trial as "guides to determining what is reasonable" performance by counsel.")(citing *Padilla v. Kentucky*, 559 U.S. 356 (2010)).  Put differently, an attorney's performance will be deficient if "counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687.  *See Howard v. United States,* 743 F.3d 459, 464 (6thCir. 2014)(discussing *Strickland*).

The second part of the two-part test of *Strickland* requires that the movant establish that the deficient performance of his or her attorney prejudiced the defense. *Id*. When a claim of ineffective assistance is raised in the context of trial, this second part of the *Strickland* test requires the movant to show that "a reasonable probability existed that but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. *See also, Wong v. Belmontes*, 558 U.S. 15, 27 (2009) (per curiam) ("But *Strickland* does not require the State to 'rule out' "a more favorable outcome to prevail. "Rather, *Strickland* places the burden on the defendant, not the State, to show a 'reasonable probability' that the result would have been different"), *reh'g denied*, 130 S.Ct. 1122, 175 L.Ed.2d 931 (Jan. 11, 2010).

A reasonable probability in that context is defined by *Strickland* to be a probability sufficient to undermine the confidence of the court in the outcome of the proceedings. *Id*. In the words of *Strickland*, "the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686; *Bigelow v. Haviland*, 576 F.3d 284, 287 (6th Cir. 2009) ("To prevail on an ineffective-assistance claim under the Sixth Amendment, a plaintiff must show that his counsel's performance was constitutionally deficient and that it prejudiced him 'render[ing] the trial unfair and the result unreliable.'") (citing *Hall v. Vasvinder*, 563 F.3d 222, 237 (6th Cir. 2009)).

Courts are directed by *Strickland* to be highly deferential in their scrutiny of the performance of counsel. *Strickland*, 466 U.S. at 689. In fact, *Strickland* cautions directly that "the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional

judgment." *Id*. at 690; *Stumpf v. Robinson*, 722 F.3d 739, 753 (6th Cir. 2013)(discussing deference under *Strickland*), *cert denied,* 134 S.Ct. 905 (2014). Review of an attorney's performance, therefore, should not be made from the perspective of hindsight, but instead should evaluate the objective reasonableness of the challenged attorney's performance in the circumstances as they existed at the time of the alleged error. *Hanna v. Ishee,* 694 F.3d 596, 612 (6th Cir. 2012)("Counsel's performance must be assessed according to the time of representation, rather than viewed with the benefit of hindsight.") *cert denied* 124 S.Ct. 101 (2013)(citing *Strickland*). The tactical decisions of a defendant's trial counsel are presumed to be part of sound trial strategy and therefore will not be subject to successful attack absent the movant overcoming such presumption. *Varden v. Wainwright*, 477 U.S. 168, 185-87 (1986); *O'Hara v. Wigginton,* 24 F.3d 823, 828 (6th Cir. 2006)( [T]he standard to which an attorney is held is not that of the most astute counsel, but rather that of "reasonably effective assistance.")(citing *Strickland*).

In 2011, two important decisions the U.S. Supreme Court emphasized yet again the strict nature of the standard created under *Strickland*. *See, Premo v. Moore*, 562 U.S. __, 131 S.Ct. 733 (2011) and *Harrington v. Richter*, 562 U.S. __, 131 S. Ct. 770 (2011). Both of these cases express in plain terms the imposing challenge that *Strickland* creates for a defendant who hopes to upend his criminal conviction based on a claim of ineffective assistance of counsel. The following quote from *Premo* leaves little doubt about the high court's view on such matters.

> "'Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S.___, ___ (2010) (slip op., at 14). An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial [or in pretrial proceedings], and so the *Strickland* standard must be applied with scrupulous care, lest 'intrusive post-trial inquiry' threaten the integrity of the very adversarial process the right to counsel is meant to serve. *Strickland*, 466 U.S. at 689-90. Even under *de novo* review, the standard for judging counsel's

> representation is a most deferential one unlike a later reviewing court, the
> attorney observed the relevant proceedings, knew of materials outside the
> record, and interacted with the client, with opposing counsel, and with the
> judge. It is 'all too tempting' to 'second-guess counsel's assistance after
> conviction or adverse sentence.' *Id*. at 689; *see also, Bell v. Cone*, 535
> U.S. 685, 702 (2002); *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).
> The question is whether an attorney's representation amounted to
> incompetence under 'prevailing professional norms,' not whether it
> deviated from best practices or most common custom. *Strickland*, 466
> U.S. at 690.

*Premo*, 131 S. Ct. at 731-40. With this cautionary language in mind, the Court turns now to the

substance of Calloway's claims.


**The Search Warrant Issue.**

Calloway argues in ground 1 of his motion that his rights to due process and to effective

assistance of counsel were violated by the execution of a defective search warrant. The warrant

at issue was executed by Louisville police on Dec. 19, 2006, at Calloway's home at 7219

Oakburn Drive in Louisville, Kentucky. The execution of the warrant led to the discovery of

various critical items of evidence. Among the items seized were the Love's Country Store

receipt containing the handwritten phone contact numbers for the Louisiana bail bondsmen, a

money wire transaction receipt showing the transfer of the $24,000 in bail money supplied to co-

defendant Meadoweal, and a copy of a contract for legal services provided to Calista Shirley,

who was herself arrested in June of 2006, in possession of 30 kg. of cocaine outside Houston,

Texas. Police as a result of the same search also recovered $27,480 in cash and several firearms.

Calloway now insists that the search warrant executed at his home bears the forged

signature of state circuit court judge Geoffrey P. Morris, a retired Jefferson County circuit court

judge who held court in the 11th Division of Jefferson Circuit Court in Louisville, Kentucky from

1992, until his retirement in 2010. Calloway insists that the prosecution knew throughout the

trial that the judge's signature was forged and refused to reveal this material defect. Calloway further claims that he raised his concern about the authenticity of Judge Morris's signature to his trial counsel, David Zorin, who failed to adequately challenge the authenticity of the judge's signature or to effectively cross-examine Government witnesses on this critical issue.[20]

The United States in its response points out first that Calloway unsuccessfully raised the forgery issue involving the search warrant in his Rule 33(a) motion for a new trial based on the alleged discovery of new evidence. Calloway also raised the issue on appeal from the order of the District Court that denied his motion for a new trial, again without success. The Government accordingly suggests that to the extent that Calloway has previously raised the search warrant issue as a due process claim, he is now barred from re-litigating it in his current motion.

The Government continues in its response to add that Calloway's first ground, aside from any procedural deficiency, is factually meritless in any event. The Government has attached to its response three sworn affidavits.[21] The first affidavit is that of LMPD Sgt. Det. E. Aaron Crowell.[22] The second affidavit is that of the aforementioned Jefferson Circuit Court Judge, Judge Geoffrey Morris.[23] The final affidavit is that of Calloway's trial attorney, David Zorin.[24]

Det. Crowell is the officer who drafted the search warrant for Calloway's home at 7219 Oakburn Drive. Crowell avers in his affidavit that on Dec. 19, 2006, he drafted the search warrant and the affidavit in support of it, presenting it along with three duplicates to Judge Morris at approximately 5:30 that afternoon.[25] Det. Crowell then states in his affidavit that he watched as Judge Morris read the warrant and affidavit. He answered questions by Judge Morris

---

[20] DN 410, reply, Exh A, Calloway Aff., pp. 1-2, ¶2-3.
[21] DN 405, Resp., Ex. 1-2.
[22] Id., Ex. 1, Crowell Aff.
[23] Id., Ex. 2, Judge Morris Aff.
[24] Id, Ex. 3, Zorin, Aff.
[25] Id. Ex. 1, Crowell Aff, p. 2, ¶4.

about the search warrant.[26]  Finally, Det. Crowell witnessed Judge Morris sign the original and the duplicates of the search warrant and affidavit in his presence.[27]

Judge Morris in his affidavit relates the same sequence of events that afternoon on Dec. 19, 2006.[28]  Judge Morris also examined his signatures on the original and duplicate search warrants and search warrant affidavits.[29]  Judge Morris states, "Although there is a slight variation between the signatures on the two duplicate-original search warrants and order revoking [Calloway's] probation, each of the signatures were made by the affiant."[30]  Judge Morris continues in his affidavit to express his similar belief that the signatures on the 7219 Oakburn Drive search warrant and affidavit are likewise his own signature, as well.[31]  Attorney Zorin in his affidavit states that upon examination of the signatures he does not believe the signatures to be fraudulent or otherwise falsified.[32]  The Government accordingly concludes based on these affidavits that Calloway's arguments involving the search warrant, whether made under the Fifth or Sixth Amendment, are factually meritless "because the search warrant was not a forgery…."[33]

Calloway in the first of two affidavits filed in support of his reply indicates that he advised his attorney prior to trial about the apparent forgery of the Judge Morris's signature.[34]  According to Calloway, he noticed the potential signature problem when he compared the signatures of Judge Morris on the search warrant and search warrant affidavit with the Judge's signatures on other of his court orders.  Although Calloway brought the forgery issue to the

---

[26] Id.
[27] Id.
[28] DN 405, Ex. 2, Morris Aff., p. 1, ¶2-3.
[29] Id.,p. 1-2, ¶3.
[30] Id.
[31] Id., p. 2, ¶4.
[32] Id., Zorin Aff., p. 3, ¶8.
[33] DN 405, p. 17.
[34] DN 410, Reply, Exh.A, Calloway aff.,  p. 1, ¶ 2.

attention of attorney Zorin, Calloway alleges in his affidavit that Zorin at most "made a perfunctory mention of [the issue]… but then proceeded to drop the subject."[35]  Calloway also argues in his reply that this Court may not consider the contents of the three affidavits discussed above because they do not meet that explicit requirement of 28 U.S.C. § 1746 that each affidavit conclude with the statutorily prescribed statement, "I declare…under penalty of perjury that the foregoing is true and correct."  *Id.*  For the reasons set forth below we reject these arguments.

Initially, we must agree with the Government as to Calloway's first ground for relief. Calloway is not mistaken to the extent that he asserts as a matter of law that due process will be denied when the prosecution obtains the conviction of a defendant by use of deliberate deception of the court and jury through the presentation of false evidence.  *See, Peoples v. Lafler*, 734 F.3d 503, 515-16 (6th Cir. 2013) (citing *Brooks v. Tennessee*, 626 F.3d 878, 894 (6th Cir. 2010)). Deliberate deception, if knowingly relied upon by the Government to obtain conviction, is "incompatible with 'rudimentary demands of justice.'"  *Peoples*, 734 F.3d at 515 (citing *Giglio v. United States*, 405 U.S. 150, 153 (1972)).

This principle, as such, is beyond dispute.  The problem for Calloway, however, is that any argument based upon such well-established constitutional principles should have been raised on direct appeal as a due process claim.  Calloway asserts that he was aware of the potential search warrant forgery issue prior to trial.  He therefore cannot now claim that the issue was unavailable to be raised as a due process claim by way of a timely argument on direct appeal. Calloway took a direct appeal, but did not raise the issue and has not shown cause or prejudice for his failure to do so.  *See, United States v. Frady*, 456 U.S. 152, 164-65 (1982); *Murr v. United States*, 200 F.3d 896, 900 (6th Cir. 2000) ("It is well-settled law that failure to raise an

---

[35] DN 410, reply Exh. A, Calloway aff., p 2, ¶ 3.

argument at trial or on direct appeal is waived on collateral review under §2255, absent a showing of both cause and actual prejudice.").

Further, to the extent that Calloway *did* first broach the search warrant signature forgery issue by way of motion for a new trial under Rule 33(a), and raised the same issue again on appeal from the District Court order that denied the motion, he cannot take a "second bite" of the due process apple, so to speak. Issues unsuccessfully raised on appeal may not be brought again by way of §2255 motion to vacate absent highly exceptional circumstances. *See, Dupont v. United States*, 76 F.3d 108, 110 (6th Cir. 1996) ("A §2255 motion may not be used to re-litigate an issue that was raised on appeal absent highly exceptional circumstances."). Accordingly, one may conclude that the due process claim arising from the forged search warrant signature issue has been doubly defaulted, first by the failure of Calloway to raise the due process issue on direct appeal from his conviction, and then again by his assertion of the same issue in the context of motion for new trial followed by an unsuccessful direct appeal from denial of the Rule 33 motion.

The above reasoning does not address Calloway's claim of ineffective assistance of counsel arising under the Sixth Amendment. Calloway insists that his trial counsel failed to pursue Calloway's concerns about the allegedly forged signature of Judge Morris on the search warrant and affidavit. The problem, of course, with this Sixth Amendment claim is that the facts simply do not support it. The affidavits of the detective and the judge both factually refute Calloway's claim of forgery, as does that of his own attorney. Further there is no basis on which to simply ignore the affidavits, as Calloway would have the Court do, merely because they do not strictly meet the statutory requirements under 28 U.S.C. § 1746 for *unsworn* declarations. All of the affidavits tendered on behalf of Judge Morris, LMPD Det. Sgt. Crowell and attorney

Zorin respectively are *sworn* declarations executed before a notary public.[36]  They are not

*unsworn* declarations subject to the provisions of 28 U.S.C. § 1746.  *See, Peters v. Lincoln Elec.*

*Co.,* 285 F.3d. 456, 475-76 (6th Cir. 2003) (pointing out the distinction between sworn notarized

statements and unsworn declarations under 28 U.S.C. § 1746).  In other words the declarants

affirmed under oath the truth of the contents of each affidavit before signing each before a notary

public.  We therefore cannot, and will not, ignore these three critical affidavits, all of which put

to rest, factually speaking, Calloway's claim that police forged Judge Morris's signature on the

search warrant and search warrant affidavit.

Efforts by attorney Zorin to pursue this matter would not have been fruitful since the

contested signatures were those of Judge Morris.  Accordingly, Calloway's initial Sixth

Amendment claim is unpersuasive as attorney Zorin was not deficient in pursuing a meritless

issue, and Calloway was not prejudiced since pursuing the issue would not have resulted in any

benefit to the defense.  *See, United States v. Thompson* Case Nos. 09-00017-CB/03-00168-CB,

2011 WL 98548 at *5 (S.D. Ala. Jan. 11, 2011) (rejecting claim of ineffective assistance of trial

counsel based on failure of attorney to challenge the authenticity of judge's signature on search

warrant, where "no reasonable person would have suspected, much less concluded, that the

search warrant was forged based on nothing more than an illegible signature and a date.").


**The Venue Issue.**

Calloway in ground 2 argues that the venue of his trial in the Western District of

Kentucky as to counts 2 and 4 of the third superseding indictment was improper.  Counts 2 and 4

charged Calloway with attempted possession with intent to distribute 5 kg. or more of cocaine in

violation of 21 U.S.C. §§812 and 841(a)(1).  Calloway explains in support of ground 2 that no

---

[36]  DN 405, Exhs. 1, 2, 3.

evidence was presented at trial that would connect him with any of the events involving the arrest of Calista Shirley, an unindicted co-conspirator in Texas in June of 2006. Accordingly, Calloway insists that count 2 related to Calista Shirley's Texas drug run could not be properly tried in Kentucky against him when no evidence supported his involvement.

Calloway relies on the same reasoning to support his lack of venue claim involving count 4. Essentially, he argues that the prosecution produced no evidence that associated him with any attempt to possess cocaine in the Western District of Kentucky on the charged dates based on the arrest of Luciana Meadoweal in Louisiana on Dec. 18, 2006. Calloway, despite his conviction, denies any connection to the cocaine seized from Meadoweal's vehicle on that date. He therefore reasons that the District Court should have dismissed both counts 2 and 4 against him due to a lack of evidence to demonstrate proper venue in the Western District of Kentucky. Calloway faults his trial counsel for failing to make such a motion to dismiss counts 2 and 4 based on improper venue.

We consider Calloway's venue-related arguments only in the context of his claim of ineffective assistance of trial counsel. In other words, as before, we cannot address the underlying venue claim on its own. Such a claim should have been raised on direct appeal. It was not and Calloway therefore waived the opportunity to separately pursue the underlying venue claim given his failure to show cause and prejudice. . See *Williams v. United States*, 582 F.2d 1039, 1042 (6th Cir. 1978)(where defendant fails to raise improper venue issue prior to trial the federal courts ordinarily will not consider it in the context of a § 2255 motion to vacate); *Tackett v. United States*, case no. 95-5653, 1996 WL 102415 at *2 (6th Cir. 1996)(same).

The claim also fails as a Sixth Amendment claim of ineffective assistance of counsel. The federal statute that governs venue for multi-district offenses in contained in 18 U.S.C.

§3237(a).  The language of this statute clearly indicates that when an offense is begun in one district and completed in another, or is committed in more than one district, it may be prosecuted in any district in which the offense was "begun, continued or completed."  *Id*.  As *United States v. Zidell*, 323 F.3d 412, 422 (6th Cir. 2003), *cert. den'd*, 540 U.S. 824 (2003) explains, the charge of possession with intent to distribute a controlled substance is considered to be a continuing offense.  *Id*. (citing *United States v. Medina*, 992 F.2d 573, 587 (6th Cir. 1993), *cert. den'd*, 510 U.S. 1109 (1994).  Consequently, the distribution of a controlled substance under the federal drug laws is held to "include other acts perpetrated in furtherance of a transfer or sale, such as arranging or supervising the delivery, or negotiating for or receiving the purchase price." *See, United States v. Colon*, 268 F.3d 367, 377(6th Cir. 2001).

A continuing offense such as drug trafficking is not considered to be completed for the purpose of the venue statute until the drugs reach their final destination and "venue is proper in any district along the way." *United States v. Turner*, 936 F.2d 221, 226 (6th Cir. 1991).  Indeed, under *Zidell*, "It is not essential that the defendant ever have been physically present in the district in question, so long as 'the offense continued into' this district." *Id*. at 422 (quoting *Medina*, 992 F.2d at 587).  *See also, United States v. Thomas*, 74 F.3d 701, 709 (6th Cir. 1996) ("Venue lies in any district in which the offense was committed.").  The United States is required to show venue only by a preponderance of the evidence.

Here, the proof offered at trial easily satisfied the Government's burden in this respect. First, police discovered Calista Shirley's driver's license in Calloway's home along with various documents including a contract for her legal representation on criminal charges arising from her arrest on June 14, 2006, by Texas police when they discovered cocaine hidden in a suitcase in the trunk of her vehicle.  The Government also correctly notes that Shirley's vehicle was shown

to have been purchased at Square Deal Autos, the same Louisville dealership where Meadoweal's Lincoln automobile was purchased.[37]  Both vehicles therefore were shown to have originated in Louisville, Kentucky.

Further, Meadoweal's conduct upon her own arrest in Louisiana likewise directly points to Calloway's involvement in the Western District of Kentucky.  Meadoweal was returning to Kentucky when she was arrested.  After her arrest, she contacted relatives in Elizabethtown, Kentucky, and had her daughter provide her with the cellphone number for Calloway.[38] Meadoweal also contacted her brother in an effort to have him make arrangements for her personal car, which she had left in Elizabethtown prior to her drug trafficking trip to Texas.[39]

The items seized from Calloway's home, the Louisiana grocery store receipt with the handwritten names of the four bail bondsmen, along with the Western Union receipt for the $24,000 in bail money wired to Meadoweal in Louisiana establish not only Calloway's knowledge of and involvement in events involving Meadoweal, but also that such involvement occurred in the Western District of Kentucky.  Accordingly, the Government readily satisfied its burden to establish venue as to counts 2 and 4 of the third superseding indictment.

Any effort by Calloway's trial counsel to challenge venue in this respect would have been unavailing.  Calloway cannot show that his attorney's performance was deficient or that Calloway suffered any prejudice thereby.  *See, United States v. Rivera-Nievla*, Case Nos. 06-07-2(JDB)/13-744(JDB), 2014 WL 1623260 at *4 (D.D.C. Apr. 24, 2014) (federal prisoner failed to show his counsel was constitutionally deficient because counsel did not move to dismiss indictment for improper venue where no factual basis existed for such a motion given the nature

---

[37] DN 289, Tr. Vol. 6, pp. 81-82 (Tremaine); DN 285, Vol. 2, pp. 13-14, 20 (Granelli); DN 284, Vol. 2, pp. 170-72 (Sims).
[38] DN 286, Vol. 4, pp. 92-93 (Tremaine); U.S. Ex. 51, CD of phone calls made by Meadoweal from jail in Louisiana.
[39] DN 286, Vol. 4, p. 94 (Tremaine).

of the drug conspiracy charges); *Brown v. United States*, Case No. 02CV2063(HB), 2003 WL 22004834 at *1 (S.D.N.Y. Aug. 22, 2003) (rejecting a claim of ineffective assistance of counsel based on failure to assert improper venue argument where a defendant was charged with an ongoing drug trafficking offense so that his prosecution in New York was proper).

**The Alibi Instruction Issue.**

In ground 3 of his motion, Calloway alleges a violation of both the Fifth and Sixth Amendments based on the failure of his trial attorney to obtain an alibi instruction from the court during his trial. Calloway maintains that testimony presented at the trial negated the Government's theory that he had driven separately to accompany Luciana Meadoweal to Sugarland, Texas in December of 2006, and had returned separately to Louisville following her arrest in Louisiana. Calloway appears to rely primarily on the testimony of Rochelle Mitchell to support his alibi argument.[40]

Mitchell, who was a part-time, unpaid worker for Calloway, did testify at trial that she spoke with Calloway on the morning of Dec. 18, 2006.[41] She likewise testified that she actually saw Calloway in person sometime between the hours of 2 p.m. and 5 p.m. local time in Louisville that afternoon.[42] Her testimony, according to Calloway, made it vital that Calloway's trial attorney obtain an alibi jury instruction. No such instruction, however, was requested by attorney Zorin, whom Calloway now insists rendered ineffective assistance of trial counsel in this regard.

Once again, the Court notes that Calloway's alibi instruction argument, of itself, apart from his claim of ineffective assistance of counsel, cannot be successfully pursued by way of his

---

[40] DN 290, Vol. 7 pp. 3-32 (Mitchell).
[41] Id. at pp. 29-30.
[42] Id., p. 29.

current motion to vacate. The due process portion of Calloway's claim should have been raised on direct appeal. It was not. Calloway has offered no cause and prejudice for this omission. He therefore cannot proceed on his due process theory. *See Mitchell v. United States,* case no. CV11-0580-PHX-DGC (MEA)/ CR05-0886 PHX DGC, 2012 WL 1768088 at *2 (D. Ariz. May 17, 2012)(" Petitioner did not raise his constructive amendment or alibi instruction claims on direct appeal… He must therefore show both cause and actual prejudice in order to receive habeas relief on these claims.").

The Court likewise rejects Calloway's claim that attorney Zorin rendered a deficient performance, or that Calloway was prejudiced, by the failure of the court to given an alibi instruction. First, Mitchell was hardly an "ironclad" alibi witness to put the matter mildly. Mitchell did testify that she spoke with Calloway by telephone on the morning of Meadoweal's arrest on Dec. 18, 2006. The cellphone number that Mitchell dialed, however, was the very cellphone number that was tracked heading to Texas. Accordingly, Mitchell's testimony to this extent failed to establish any meaningful alibi for Calloway. In fact, it tended to strongly support the government's theory that Calloway was indeed the individual who traveled to Texas separately that December to accompany Meadoweal on her drug run to Sugarland. If that were not so then it is difficult to explain how it was that Calloway answered Mitchell's call to his cellphone, the same phone being tracked as he journeyed southward and back.

Her testimony that she later in the afternoon of the same day saw Calloway in Louisville certainly was more favorable to Calloway, but nonetheless did not resolve the issue. As the Government points out, given the timing of events, it is certainly reasonable that Calloway could have driven back to Louisville arriving late in the afternoon on Dec. 18, 2006, to be seen by Mitchell. Given the seizure of the grocery store receipt from the Love's Country Store gas

station on the same date at 11:44 a.m., Mitchell's testimony does not rule out Calloway's trip to and from Texas; nor has Calloway established any prejudice from the decision of his attorney not to request an alibi instruction.

When the entire testimony as summarized by the Sixth Circuit in its decision is considered, the Court concludes that no reasonable possibility exists that the outcome of the criminal proceedings would have varied even had attorney Zorin successfully obtained an alibi instruction. For these reasons, we reject ground 3 of Calloway's motion to vacate. *See, United States v. Dungy*, Case No. CR01-3038-MWB (N.D. Iowa, Feb. 2, 2009) (failure of defense counsel to request an alibi instruction did not prejudice the defendant in prosecution for conspiracy to distribute cocaine where defendant's presence at the scene was not an element of the crime). *See also, Newton v. Burg*, 436 F. Supp.2d 589, 595-96 (W.D. N.Y. 2005) (failure of trial counsel to request an alibi jury instruction did not prejudice the defendant where the alleged alibi testimony was relatively weak).

**Ineffective Assistance Claims.**

Calloway in ground 4 of his motion to vacate raises a multitude of claims of ineffective assistance of trial counsel. For example, he argues that attorney Zorin rendered ineffective assistance by his failure to file a motion to suppress the fruits of the warrantless searches made of the automobiles driven by Luciana Meadoweal and Calista Shirley. He argues that his attorney should have moved to suppress all of the evidence seized as a result of the search warrant executed at his home on Oakburn Drive, including: the gas station receipt from Love's Country Store in Louisiana; his tax returns; the Western Union wire transfer receipt; the airline baggage claim tag bearing his name; the two firearms seized; and the contract for legal representation of

Calista Shirley. Along similar lines, Calloway argues that attorney Zorin should have contested the warrantless installation of the GPS tracking device on the Lincoln Town Car drive by Meadoweal. He also claims that his attorney failed to subpoena various witnesses, including Stacey Todd, whom Calloway now claims was available and willing to offer "exculpatory testimony."

Calloway contends that attorney Zorin was ineffective by his failure to make a pretrial motion in limine to preclude the prosecution from having its witnesses make any mention of Calloway's prior convictions or imprisonment. Calloway claims that attorney Zorin should have moved to dismiss the conspiracy count of the third superseding indictment because it did not charge him with "entering into an agreement with anyone to possess cocaine with the intent to distribute it in Kentucky."[43] Calloway maintains that Zorin was ineffective due to his failure to challenge the admission of the jailhouse phone conversations involving Luciana Meadoweal, which ATF Special Agent Todd Tremaine testified to at trial. Calloway argues in this regard that Meadoweal's conversations were recorded without judicial authority and in violation of the Wiretap Act.

He further insists that attorney Zorin was ineffective when he failed to move to dismiss the indictment against Calloway based on the provisions of the Speedy Trial Act. He also repeats his ineffective assistance of counsel claim based upon improper venue. In a related argument, he insists that Zorin was ineffective for his failure to move to dismiss the same counts after co-defendant Jefferies pled guilty and had the counts dismissed as against him.

Calloway then turns to the introduction of various items of evidence at trial. He suggests that his trial attorney rendered ineffective assistance of counsel by his failure to object to the introduction into evidence of Calloway's tax returns during the trial. Calloway insists that his

---

[43] DN 364, Mot. p. 20, ground 4(a)(5).

tax returns were irrelevant and should have been excluded under Rule 404(b) of the Federal Rules of Evidence. He next proceeds to renew his claim of ineffective assistance of counsel based upon the omitted alibi instruction. He claims that his trial attorney should have sought to dismiss count 1 of the third superseding indictment, the conspiracy count, based on its asserted failure to charge the commission of an overt act in furtherance of the conspiracy.

Calloway maintains that attorney Zorin provided ineffective assistance of counsel by his failure to enter into plea bargaining with the federal prosecutors contrary to recent U.S. Supreme Court decisions such as *Missouri v. Frye*, __U.S.__, 132 S.Ct. 1399, 1407, 182 L.Ed.2d 397 (2012) and *Lafler v. Cooper*, __U.S.__, 132 S.Ct. 1376, 1384 (2012). Calloway argues that his attorney was deficient by his failure to object to the aiding and abetting jury instruction, which Calloway claims improperly deprived him of his alibi defense. He insists that attorney Zorin should have objected to the testimony of ATF Special Agent Tremaine, which impeached Calloway's alibi witnesses. In this regard, Calloway argues that Tremain's testimony concerning the recorded jailhouse phone conversations involving Meadoweal was improperly admitted given the previously mentioned violation of the federal Wire Tap Act.

Calloway maintains in a similar vein that his trial attorney should have objected to various hearsay statements made by Agent Tremain in his trial testimony. For example, Calloway asserts that Agent Tremain was not qualified to give expert testimony on voice identification where Tremaine testified that the voice recorded on various jailhouse telephone recordings was Calloway's voice. Likewise, Calloway protests that attorney Zorin should have objected to the introduction of the $80,000 in cash seized from Meadoweal's car following the traffic stop on Dec. 18, 2006, given the absence of any evidence linking Calloway with the seized monies.

Calloway contends that his trial attorney rendered ineffective assistance when he failed to object to testimony concerning threats made to a potential witness that were not shown to be associated with him. Calloway likewise argues that attorney Zorin rendered ineffective assistance when he failed to object to statements by the prosecutor that the cellphone at issue was found in the possession of Calloway when no testimony to that effect was offered at trial. Calloway also insists that attorney Zorin should have sought the dismissal of the Travel Act charges, 18 U.S.C. §1952 where the evidence offered by the prosecution supposedly did not support the submission of this charge to the jury, given that only "sporadic activity" was shown rather than a "continuous course of conduct."

Because no evidence directly linked Calloway to the possession of the cocaine seized on either occasion, he contends that attorney Zorin should have sought the dismissal of the substantive drug offenses, which in Calloway's view rested only upon inadequate proof of his constructive possession of the illegal drugs. Calloway insists that insufficient evidence was introduced at trial to establish his specific intent to possess cocaine with intent to distribute it merely because the Government proved that Luciana Meadoweal or Calista Shirley may have possessed cocaine themselves on various other occasions.

Calloway argues that his mere association with Meadoweal or Shirley was not sufficient to establish his constructive possession of the cocaine. Consequently, attorney Zorin should have moved to dismiss the substantive drug charges for lack of proof of Calloway's specific intent to possess cocaine with intent to distribute it

Calloway also contends that attorney Zorin should have moved to suppress all evidence seized as a result of a warrantless arrest of Calloway by Louisville police. Calloway argues that attorney Zorin should have objected to the introduction of various documents as being hearsay

evidence, specifically the physical evidence seized during the execution of the search warrant at his Oakburn Drive residence. He includes among these items his bank records, the wire money transfers, the attorney representation agreement for Calista Shirley, the Love's County Store receipt, his tax records, luggage tag, Western Union forms, airline tickets, and the recorded jail conversations between Luciana Meadoweal and her daughter. Finally, Calloway argues that the cumulative effect of all of these alleged acts of ineffective assistance was an unfair trial with an unreliable outcome in violation of the due process clause of the Fifth Amendment. We now consider each of these many claims of ineffective assistance of counsel separately.

**Ground 4(1)(a)-(g).**

We address Calloway's claims of ineffective assistance of trial counsel in the order in which they are presented in his motion to vacate in ground 4. Calloway first suggests in the introductory paragraph of ground 4 that attorney Zorin should have filed a motion to suppress the fruits of the warrantless searches made of the two cars driven by Calista Shirley and Luciana Meadoweal. Both vehicles were searched separately following a warrantless traffic stop in June and December of 2006, respectively, and found to contain large amounts of cocaine and cash. Calloway initially argues on this point only that a motion to suppress the warrantless automobile searches should have been filed by his attorney "since prosecutors contended Rickey Calloway was engaged in a conspiracy with Luciana Meadoweal and Calista Shirley." Other than this passing reference to the conspiracy charge, Calloway offers no other basis in his original motion to vacate to support a motion to suppress the warrantless search of either car at the time it was stopped.

At most, in his reply, Calloway cites to the recent decision announced in *United States v. Jones*, __U.S.__, 132 S.Ct. 945, 181 L.Ed.2d 911 (2012) as support for his related claim of ineffective assistance of counsel for attorney Zorin's failure to challenge the attachment of the GPS tracking device to Meadoweal's automobile. The *Jones* decision however is readily distinguishable from Calloway's case for a number of insurmountable reasons. First, Calloway did not claim ownership of either car, Shirley's or Meadoweal's. Second, he was not physically present when the warrantless search of either automobile occurred or when the GPS tracker was attached. Third, no one trespassed onto Calloway's property to install the GPS tracker hidden on the Lincoln Town Car. At most, LMPD officers disguised as firemen entered into the auto body shop owned by Steve Power to place the hidden tracking device. Fourth, as to the GPS tracker, it was attached pursuant to a valid search warrant. Finally, the record simply gives no indication that Calloway possessed any interest in either automobile that would create a reasonable expectation of privacy sufficient to support any such motions to suppress or a protected property interest as required by *Jones*.

Ordinarily, a search of property pre-*Jones* will occur only when "one's reasonable expectation of privacy is infringed." *United States v. Perez*, 440 F.3d 363, 374 (6th Cir. 2006), *cert. den'd*, *Rhodes v. United States*, 549 U.S. 1014 (2006) (citing *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)). When a defendant has no reasonable expectation of privacy in the object or place searched, then he will lack "standing" to challenge the constitutionality of the search. *See, United States v. Gillis*, 358 F.3d 386, 391 (6th Cir. 2004), *cert. den'd*, 543 U.S. 846 (2004) (citing *Rakas v. Illinois*, 439 U.S. 128 (1978)). To establish "standing," the defendant must show both an actual subjective expectation of privacy in the place or object searched and such

expectation must be objectively reasonable in the sense that it is "one that society is prepared to recognize as reasonable." *United States v. Knox*, 839 F.2d 285, 293 (6th Cir. 1988).

Calloway has shown no subjective or objectively reasonable expectation of privacy in either of the vehicles searched at the time it was stopped, the one driven by Calista Shirley or the one driven by his co-defendant Luciana Meadoweal. Because Calloway failed to establish such a reasonable expectation of privacy, and likewise failed to establish the violation of any protected property interest to support a constitutional claim post-*Jones,* any motion to suppress the warrantless search of either car would have been fruitless, as well as a motion to suppress based on the attachment of the hidden GPS tracker. Attorney Zorin cannot be considered to have rendered ineffective assistance of counsel by his failure to file frivolous motions to suppress. *Holmes v. United States,* No. 05-6116, 2008 WL 2467978 at * 481-82 (6th Cir. 2008)("Trial counsel was not ineffective for failing to file a motion to suppress that would have been meritless.").

In the same portion of ground 4 of his motion to vacate, Calloway renews his arguments concerning the allegedly forged signature of Judge Morris on the Dec. 19, 2006 search warrant for 7219 Oakburn Drive. The Court previously has discussed Calloway's forgery allegations. They are refuted by the sworn affidavits of the LMPD officer who obtained the search warrant and the issuing state judge, Judge Morris.

Calloway includes in his initial argument in ground 4 an alphabetized list of items seized from his Oakburn Drive home that were offered into evidence against him at trial. It appears that he challenges the introduction of these items, based not only on a claim of unlawful seizure related to the alleged inadequacy of the search warrant, but also based on various evidentiary grounds all of which themselves are a separate basis for his overriding claim of

ineffective assistance of trial counsel. In other words, Calloway insists that the professional performance of attorney Zorin was deficient, and that Calloway was prejudiced as a result, where the listed items that were unlawfully seized in the first instance were subsequently, and improperly, introduced under the Federal Rules of Evidence against him at trial.

The listed items identified by Calloway include: (a) the receipt from Love's Country Store in St. Martin's Parish, Louisiana, dated Dec. 18, 2006; (b) Calloway's income tax returns; (c) the Western Union wire receipts that documented the $24,000 in bail money sent to Luciana Meadoweal; (d) Calloway's airline baggage claim tag; (e) the two firearms seized from Calloway's bedroom closet; (f) the contract for legal representation for Calista Shirley; and (g) certain money wire transfer receipts.

As noted, Calloway claims that attorney Zorin should have filed a motion to suppress from evidence all of the above-listed items based not only on the alleged forgery of Judge Morris's signature, but also based upon claims that the affidavit filed in support of the search warrant failed to establish probable cause to search 7219 Oakburn Drive, and that the seized items fell outside the scope of the warrant. Neither of these arguments as the basis for a claim of ineffective assistance of counsel, or even as a stand-alone Fourth Amendment claim, if it were considered as such, is persuasive upon inspection. The United States has attached to its response the search warrant and affidavit for Calloway's home. Examination of these documents immediately reveals that the search warrant affidavit readily meets the liberal standard for probable cause.

Judicial review of a search warrant affidavit to establish its probable cause sufficiency is extraordinarily deferential. *See, United States v. Brown*, 732 F.3d 569, 573 (6th Cir. 2013), *cert. den'd*, 134 S.Ct. 539 (2013) ("[W]e must give great deference to a magistrate's determination of

probable cause.").  So long as the magistrate had a substantial basis to find, based upon the contents of the affidavit, that a reasonable probability existed that incriminating evidence would be found in the place to be searched at the time of the search, the warrant will be upheld.  *United States v. Davidson*, 936 F.2d 856, 859 (6th Cir. 1991).  The affidavit in this respect is reviewed in a commonsense fashion simply to determine based on the totality of the circumstances whether the items sought would likely be found at the location of the search on the date in question. *Brown*, 732 F.3d at 573 (citing *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000) (*en banc*), *cert. den'd*, 531 U.S. 907 (2000).

Because the search warrant affidavit in question, upon review, easily satisfies this standard, and because Calloway does not point to any specific defects in the affidavit that would call into question such probable cause determination, any motion to suppress based upon a claim that the search warrant affidavit failed to establish probable cause would be fruitless.  Attorney Zorin once again was not ineffective for his decision not to file a frivolous motion to suppress based on the absence of probable cause.  *See Holmes v. United States,* No. 05-6116, 2008 WL 2467978 at * 481-82 (6th Cir. 2008)

Calloway's claim that the officers who executed the search warrant exceeded its scope by seizing the above-listed documents likewise is an inadequate basis on which to rest a claim of ineffective assistance of trial counsel.  Appendix A to the search warrant plainly includes not only cocaine and other suspected illegal controlled substances, but also lists various drug-related items.  They include "all records reflective of drug activity, concealment or proceeds, from drug sales; any journals, address books and/or computers, which may contain the identities of supplies or buyers, and any/or records of drug transactions."[44]  Also included in Appendix A to the search warrant as being subject to seizure are "any bills or statements that may provide information as

---

[44] DN 405, Resp. Ex. 1, Search Warrant Aff, Appx. A.

to financial status; and any guns or weapons used to protect any said illegal substances."[45]  It is therefore clear to the Court that the seizure of the items listed by Calloway did not fall outside the scope of the search warrant.

All of the seized items were described with reasonable particularity in Appendix A so that no possibility existed that the warrant was used to improperly "seize one thing under a warrant describing another" in violation of the Fourth Amendment.  *See, United States v. Wright*, 343 F.3d 849, 863 (6th Cir. 2003), *cert. den'd*, 541 U.S. 900 (2004) (citing *Marron v. United States*, 275 U.S. 192, 196 (1927)).  All of the items seized by police during the execution of the search warrant likewise were reasonably related to the drug offenses under investigation so as to justify their seizure.  *Id.* (citing *United States v. Brown*, 49 F.3d 1162, 1169 (6th Cir.1995) ("Even evidence not described in a search warrant may be seized if it is reasonably related to the offense which formed the basis for the search warrant.").  Attorney Zorin therefore would not have succeeded in a challenge to the execution of the search warrant under either theory offered by Calloway - - lack of probable cause or seizure of documentary items outside the scope of the warrant - - so that no successful claim of ineffective assistance of counsel can be made on this basis.  *See gen., Tankesly v. Mills*, 491 Fed. Appx. 649, 657 (6th Cir. 2012) (rejecting claim of ineffective assistance of counsel based on failure to challenge seizure as occurring outside the scope of the search warrant where counsel instead elected to challenge the admission of the seized items under Rule 404(b) as a valid trial tactic).

Calloway next maintains that his trial attorney failed to adequately challenge the admission of the various items of documentary evidence seized from his home that were introduced against him at trial.  He claims in this regard that many of the items were inadmissible hearsay admitted at trial in violation of Rule 802 of the Federal Rules of Evidence.  As an

---

[45] Id.

abstract matter, Calloway is correct to the extent that "as a general rule, hearsay is not admissible in federal courts." *United States v. Rodriguez-Lopez*, 565 F.3d 312, 314 (6th Cir. 2009) (citing Fed.R.Evid. 802). The prohibition against the admission of such hearsay is itself, however, limited by the definition of hearsay contained in Fed.R.Evid. 801(c). Under this rule, hearsay is defined to be a statement, other than one made by the declarant while testifying at trial, that is offered into evidence to prove the truth of its contents. *Id*. (citing Fed.R.Evid. 801(c)). Consequently, an out-of-court statement that is offered at trial as evidence of the bare fact that it was said or otherwise made, rather than for its truth, is *not* hearsay under Rule 801(c). *Blair v. Henry Filters, Inc.*, 505 F.3d 517, 524 (6th Cir. 2007).

With this principle firmly in mind, the Court turns to the first of the items at issue, the Love's Country Store receipt. The receipt was not inadmissible hearsay improperly admitted at Calloway's trial. The receipt was not offered into evidence to prove its contents. Rather, it was introduced at trial to link Calloway to a location in Louisiana near where his co-defendant was arrested with a substantial amount of cocaine and cash. The Government, therefore, is correct that the Love's Country Store receipt falls within the observation made in *United States v. Serrano*, 434 F.3d 1003, 1005 (7th Cir. 2006) that "many courts … have held that merchandise receipts, utility bills and similar documents are not hearsay when they are offered as circumstantial evidence to link a defendant to a particular place, to other defendants, or to an illegal item." *See gen., United States v. Hathaway*, 798 F.2d 902, 906 (6th Cir. 1986) (Business records introduced at trial to establish that the defendant lied about their possession were not hearsay evidence). The result of this reasoning is that any effort by attorney Zorin to object to the introduction of the Louisiana receipt would have been fruitless as it simply was not inadmissible hearsay.

To the extent that Calloway raises the same issue with respect to any of the other documentary items seized from his home, i.e. tax receipts, Western Union receipts, legal services agreement, the same principles would apply. These documents were introduced not to establish the truth of their contents so much as to show an association of Calloway with various of his co-defendants involved in drug trafficking. Thus, any objection to the introduction of these items under Fed.R.Evid. 802 would not have resulted in their exclusion from consideration by the jury. Calloway's trial attorney was not ineffective for failing to object to the introduction of these items under the same Rule. *See Hankison v. Warden Lebanon Corr. Instit.,* case no. 1:12-cv-385, 2013 WL 5595959 at *2 (S.D. Ohio Oct. 11, 2013)(failure of counsel to raise meritless hearsay objection did not constitute ineffective assistance of counsel). *See also*, *Matylinsky v. Budge*, 577 F.3d 1083, 1094 (9th Cir.2009), *cert. denied* —— U.S. ——, 130 S.Ct. 1154, 175 L.Ed.2d 984 (2010) (counsel's failure to object to testimony on hearsay grounds not ineffective where objection would have been properly overruled).


**Ground 4(2).**

In this portion of ground 4, Calloway maintains based on *United States v. Jones,* ___U.S.___, 132 S.Ct. 945, 181 L.Ed.2d 911 (2012) that attorney Zorin should have attempted to suppress from evidence any information obtained by the attachment of the hidden GPS tracking device on the 1998 Lincoln Towncar driven by his co-defendant, Luciana Meadoweal. This hidden tracking device was installed by the local police pursuant to the authority of a search warrant specifically obtained for that purpose by Det. Seelye, as noted by the Sixth Circuit in *United States v. Jefferies*, 457 Fed.Appx. 471, 474 (6th Cir. 2012), *cert. den'd*, 132 S.Ct. 2418 (2012). The mere fact that the officers apparently forced entry to Steve Power's auto body shop

under pretext to execute the warrant does not affect the ultimate conclusion that no possible Fourth Amendment violation occurred where Calloway had no ownership or other proprietary interest in the auto body shop or the Lincoln Town Car in the first instance. Consequently, the property rights analysis of the *Jones* decision does not apply.

Because no basis has been asserted on which to challenge this warrant, and because Calloway cannot establish his Fourth Amendment "standing" as explained above, any attempt to suppress information obtained from the GPS tracker attached to the Lincoln had no realistic possibility of success. The failure of Zorin to make such a futile attempt could not be considered ineffective assistance of counsel, as earlier noted. *See, Holmes v. United States*, 281 Fed. Appx. At 481-82; *Brown v. McKee*, 231 Fed. Appx. 469, 475 (6th Cir. 2007) ("'[T]rial counsel's failure to bring a meritless suppression motion cannot constitute ineffective assistance.'") (quoting *United States v. Tisdale*, 195 F.3d 70, 73-74 (2nd Cir. 1999)).


### Ground 4(3)

Calloway argues next that the decision of attorney Zorin not to put Stacy Todd on the witness stand, or to call Co-defendant Ronald Jefferies, or his younger brother Daniel Calloway, to testify as alibi witnesses constituted ineffective assistance of counsel. Attorney Zorin has supplied an affidavit, which the Government has included with its response to the motion to vacate.[46] In his affidavit, attorney Zorin indicates that the decision not to call Todd as a witness was made jointly with the knowledge and consent of Calloway.[47] According to Zorin, Todd had stated that he did not believe that his testimony would be exculpatory. Zorin observed that Todd appeared to be a reluctant witness who in Zorin's view should not testify for the defense, which

---

[46] DN 405, Resp., Ex. 3, Zorin Aff.
[47] Id., Zorin Aff. p. 3, ¶10.

Zorin advised Calloway.[48]  Accordingly, the decision was jointly made not to call Stacy Todd because his testimony would not have been exculpatory and might well have damaged the defense had Todd been caught on the witness stand committing perjury.

Calloway now maintains in his reply that Todd was present at trial and was willing to testify in accordance with Todd's post-conviction affidavits.  Calloway denies in his own, second affidavit that he agreed with Zorin not to call Todd as a witness at trial.[49]  He has attached to his reply two unsworn declarations of Stacy Todd, one dated June 8, 2012[50]and a second one dated September 5, 2014.[51]  Todd asserts in his declarations that it was he, not Calloway, who accompanied Meadoweal to Texas and back that December.[52]  Todd similarly claims that it was he, not Calloway, who carried the 457-2630 cell phone, which he explains was not Calloway's phone, but his own phone as well as the company phone for Advanced Realty Group.[53]  Todd also states that he was the one, not Calloway, who stopped at Love's Country Store in Louisiana and who wrote down the bail bondsman phone numbers found on the receipt that Todd claims he later gave to Calloway upon returning to Louisville.[54]  Finally, Todd insists that he was not a reluctant witness, nor was he coerced or threatened to make his written declarations and that if he had been called to testify at trial on Calloway's behalf he would have so testified.[55]

Examination of attorney Zorin's affidavit, Calloway's affidavits and those of Stacy Todd persuades the Court that no deficient performance, much less actual prejudice, occurred when the decision was made, not to call Stacy Todd as a witness for the defense.  A defense counsel has no obligation to call a witness whose testimony would not have exculpated the defendant.

[48] Id.
[49] DN 410, Reply, Exh B, Calloway 2nd aff.
[50] DN 410, Reply, Exh. C, Todd aff.
[51] Id., Exh. D, 2nd Todd aff.
[52] Id., Todd aff., p. 1, ¶¶ 1-2.
[53] Id., Todd aff., p. 1, ¶¶ 5-6.
[54] Id. Todd, aff., p. 1, ¶¶ 3-4.
[55] Id. Todd. Aff. P. 2, ¶ 8.

*Pillette v. Verghuis*, 408 Fed. Appx. 873, 884 (6th Cir. 2010) (citing *Millender v. Adams*, 376

F.3d 520, 527 (6th Cir. 2004)).  Indeed, the failure of an attorney to present potentially

exculpatory evidence will not automatically be considered to be a deficient performance where

such decision is justified by tactical or other reasonable considerations.  *Caldwell v. Lewis*, 414

Fed. Appx. 80, 815-16 (6th Cir. 2011) (citing *Pavel v. Hollins*, 261 F.3d 210, 220 (2nd Cir.

2001)).

     It is clear from a review of attorney Zorin's affidavit that his decisions not to call Stacy

Todd rested on sound tactical considerations.  Todd appeared to Zorin to be at best a reluctant

witness whose questionable testimony as Zorin understood it would not have necessarily

exculpated Calloway, and indeed could have resulted in a significant blow to the defense if the

prosecution established on cross-examination that Todd was lying to the jury.  Under such

circumstances, no ineffective assistance of counsel occurred merely because a reluctant witness,

who may well have been lying had he testified, was not called by the defense contrary to the

wishes of the defendant.

     Multiple federal decisions confirm this view.  *See United States v. Banaga,* 443 Fed.

Appx 262, 264 (9th Cir. 2011)(trial attorney's decision not to call defendant as a witness at trial

was not objectively unreasonable where the risks associated with calling the witness outweighed

the potential benefit); *Epsom v. Hall,* 330 F.3d 49, 53-54 (1st Cir. 2003)(" Often, a weak witness

or argument is not merely useless but, worse than that, may detract from the strength of the case

by distracting from stronger arguments and focusing attention on weaknesses."); *Williams v.

Bowersox,* 340 F.3d 667, 669 (8th Cir. 2003)( "Choice of witnesses and defense tactics are

ordinarily matters of trial strategy and will not support a claim of ineffective assistance of

counsel."); *Parker v. Bowersox*, 94 F.3d 458, 461-62 (8th Cir. 1996)*cert den'd*, 520 U.S. 1171

(1997)(failure to call reluctant witness was not ineffective assistance where witness was not inclined to get involved and the absence of his potential testimony would not have changed the outcome of the proceedings given the government's overwhelming proof of guilt); *Small v. Warden, Ross Corr. Instit.,* case no. No. 2:12–CV–0958, 2013 WL 3745834 at *6 (S.D. Ohio July 15, 2013)("[C]ourts have traditionally been reluctant to find ineffective assistance of counsel in those cases where an attorney fails to call a particular witness."); *Jordan v. Sheets,* case No. 2:10–CV–34, 2012 WL 553091 at *23 (S.D. Ohio Feb. 21, 2012)(same); *Steele v. Scribner,* case no. ED CV 06-00250-ODW (VBK), 2009 WL 910281 at *8 (C.D. Cal. Mar. 26, 2009)(failure of trial counsel to call alibi witness was not ineffective assistance where counsel reasonably concluded that the potential alibi witness would have been subject to impeachment by the prosecution).

Finally, even were we to assume that the failure to call Stacy Todd to testify at trial was in some fashion a deficient performance under *Strickland,* Calloway suffered no prejudice as a result. No reasonable probability existed that the outcome of the proceedings would have varied in any respect. Todd's anticipated testimony is inherently improbable, riddled with inconsistencies and would have done nothing to undermine much of the incriminating evidence against Calloway, which the Sixth Circuit in its lengthy opinion on direct appeal correctly characterized as being overwhelming. *Jefferies*, 457 Fed. Appx. at 481.

For example, despite Todd's claim that his phone was the 457-2630 cell phone, Luciana Meadoweal, had the same phone number listed in her own phone under the name "Rick," a shortened version of Calloway's first name, Rickey. No explanation is offered in Todd's affidavit why Meadoweal would not have listed his phone number under his name, "Stacy," if it were actually Todd's phone. Also, if indeed Meadoweal did call Todd at the 457-2630 phone

number on the morning of her arrest in Louisiana, why would she tell the police that she was calling her "boyfriend." According to Todd he had just met Meadoweal at a party several weeks earlier when she asked to accompany him to Houston Texas, a destination over 950 miles away. Todd never describes Meadoweal as being his girlfriend in his affidavit. Then, there is the inherent improbability that Meadoweal upon meeting Stacy Todd for the first time at a party in December would have immediately asked to follow Todd, apparently a stranger, to Houston, a city nearly 1000 miles away, merely because she did not know how to get there—a proposition that itself seems highly unlikely given the prevalence of automobile GPS systems.

More importantly, Todd's affidavit does nothing to undermine the testimony of Rochelle Mitchell, who called the 457-2630 phone number that morning on December 18. As earlier noted, Mitchell testified that she spoke with Rickey Calloway. If Stacy Todd had the 457-2630 phone that morning, as he claims in his affidavit, then Mitchell could not have spoken with Calloway at that phone number. Mitchell's testimony, which is unrefuted by Todd's affidavit, physically ties Calloway to the 457-2630 phone at a time when the phone was being tracked on its journey to Texas and back. Todd's proposed testimony does nothing to diminish this highly incriminating evidence.

Indeed, Todd's anticipated testimony does not resolve a number of incriminating facts established by the government at trial. Not only did law enforcement officers find the Love's Country Store receipt in the pocket of Calloway's coat when they executed the search warrant at his home, they also discovered in his coat pocket the Western Union receipt for payment of Meadoweal's $24,000 bond. Calista Shirley's driver's license and her contract for legal representation also were found at Calloway's home along with $27,480, an unusually large amount of cash for an otherwise law abiding individual to have on hand.

While Todd attempts in his affidavit to explain away the presence of the Love's Country Store receipt, he offers no explanation (1) why Calloway would pay the $24,000 bond for Meadoweal or (2) why Calloway would have possession of the driver's license and legal representation contract for Calista Shirley, the individual apprehended returning six months earlier on a similar drug run from Texas in an automobile purchased from the same Louisville dealership that sold Meadoweal's Lincoln Town Car—a vehicle observed by police at Calloway's Oakburn residence. Todd's affidavit also does not explain why the 457-2630 number would be found written on an identification tag on Calloway's suitcase in his home if that number was actually Todd's phone number.

None of these incriminating facts are resolved in any fashion by Todd's anticipated testimony, which on its face appears to be an ad hoc effort to explain away what is otherwise overwhelming proof of guilt. Accordingly, the decision of attorney Zorin not to call Todd, even if assumed to be objectively unreasonable, was not prejudicial as no reasonable probability existed that the outcome of the proceeding would have been anything other than it was. The face of the record as it presently exists persuades the Court of this conclusion.

This same conclusion holds true with equal force with respect to the letter of Co-defendant Ronald Jefferies and the unsworn declaration of Calloway's younger brother, Daniel.[56] Jefferies in his letter simply states that Calloway had no knowledge of or involvement in Meadoweal's or Shirley's trips to Texas. Jefferies claims that he is the one who asked both Shirley and Meadoweal to go to Texas. Otherwise, Jefferies' letter offers no meaningful factual detail. This unadorned, post-conviction assumption of complete responsibility by Jefferies ignores virtually all of the incriminating evidence that ties Calloway to the drug conspiracy and the Texas drug runs made by Shirely and Meadoweal as set forth in detail immediately above.

---

[56] DN 410 Reply, Exh. E, Jefferies aff.; Exh. F, D. Calloway aff.

The circumstances at the time also make it highly improbable that Jefferies would have rendered any such incredible testimony on Calloway's behalf at trial. On April 8, 2009, immediately prior to the start of trial for Calloway and Meadoweal, Jefferies entered into a Rule 11(c)(1)(C) plea agreement with the United States.[57] Change of plea proceedings were held the following day on April 9, 2006 before the District Court, which accepted the plea and set Jefferies sentencing for July 6, 2009.[58]

In the plea agreement, Jefferies factually acknowledged that he intentionally conspired "with others" to possess with intent to distribute in Jefferson County, Kentucky more than 5 kilograms of cocaine.[59] He further admitted that the 2132 Middle Lane home that he rented was being used by himself "and others" as a stash house and that 872 grams of powdered cocaine and 26.3 grams of cocaine base were discovered in his rental home by police during their search of the premises.[60] In return for his agreement to plead guilty to counts 1, 7 and 8 of the third superseding indictment, the United States agreed to recommend a sentence of 202 months, a 3 level downward departure for acceptance of responsibility under the United States Sentencing Guidelines (USSG) § 3E1.1(a) and (b), and most importantly, to withdraw the 21 U.S.C. § 851 notice thereby removing the possibility that Jefferies would receive a life sentence as an armed career criminal under 8 U.S.C. § 924(e).

Jury selection in Calloway's trial began a mere five days after Jefferies signed the plea agreement.[61] The guilty verdict was returned as to counts 1-6 of the third superseding indictment on April 22.[62] Had Jefferies, who had yet to be sentenced, taken the witness stand to testify as

[57] DN 217, Plea agreement.
[58] DN 218, Order.
[59] DN 217, Plea Agreement, p. 2, ¶ 3
[60] Id., P. 3, ¶3.
[61] DN 225, Jury List for Calloway.
[62] DN 223, Jury Verdict.

his post-conviction affidavit now indicates, he would have risked unraveling his highly favorable plea agreement. The United States would almost certainly have moved to set the agreement aside based on a claim of false testimony by Jefferies. Jefferies would have found himself again subject to the § 851 notice and a possible life sentence along with prosecution for perjury. Thus, everything he worked for days earlier in the plea agreement potentially would have vanished.

Given these circumstances the possibility that Jefferies would have testified at trial in accordance with his post-conviction declaration is virtually nonexistent. Accordingly, not only is Jefferies affidavit devoid of meaningful detail, and entirely conclusory as to his anticipated testimony; Jefferies would never have given such testimony in the first instance. Attorney Zorin was not deficient for failing to call a witness who would not have testified if called and whose hypothesized testimony, even if taken, would have been entirely unpersuasive given the overwhelming evidence of Calloway's guilt introduced by the United States.

The same holds true for Daniel Calloway's sworn declaration. Daniel in his declaration states merely that the two hand guns seized from the master bedroom closet in Calloway's home during the execution of the search warrant on Dec. 19, 2006 were his side arms rather than his brother's weapons. That may or may not be so, but it misses the essential point that both weapons were found hidden under clothing in the closet located in Rickey Calloway's bedroom. In other words regardless of who purchased and owned the weapons, a reasonable juror could readily believe that it was Rickey Calloway, a convicted felon, who had possession of them as charged in count 6 of the third superseding indictment. Given, Daniel's close family relationship to the Defendant, his credibility in the eyes of the jury would have already been suspect. The fact that the substance of his proposed testimony would not have been exculpatory merely

confirms that the failure to call Daniel was neither a deficient performance nor prejudicial under *Stickland*.


**Ground 4(4).**

Calloway continues to argue that attorney Zorin rendered ineffective assistance at trial by not excluding from evidence his prior criminal offenses. Calloway appears to refer to testimony at trial that Calloway was arrested on Dec. 19, 2006, and that following such arrest he phoned his co-defendant Jefferies from the jail. Testimony concerning Calloway's arrest on the current charges, as well as his jailhouse phone call to Jefferies, was indeed admitted into evidence at trial. Such evidence, however, did not involve uncharged prior misconduct as Calloway seems to claim.

Rather, the evidence related directly to his arrest on the current charges, along with his conversation with his co-defendant after such arrest. Any effort to suppress from evidence such material facts would have proven to be completely unsuccessful as the evidence does not involve prior bad acts under Fed.R.Evid. 404(b). Attorney Zorin therefor was not ineffective in this respect. *See United States v. Held,* 11 Fed. App'x. 664, 665 (8th Cir. 2001)(trial counsel was not ineffective for failing to bring meritless Rule 404(b) claim).


**Ground 4(5).**

Calloway protests that attorney Zorin should have moved to dismiss the conspiracy count of the third superseding indictment after the charge against co-defendant Jefferies was dropped by the Government due to Jefferies' guilty plea. Thus, Calloway appears to argue that the dismissal of the conspiracy charge against one co-conspirator required the dismissal of the same

charge as to the other conspirators. The law of the Sixth Circuit is otherwise. In fact, the acquittal of all of the other alleged conspirators will not automatically entitle the remaining defendant to dismissal of a conspiracy charge where sufficient evidence has been offered at trial to establish the existence of the charged conspiracy among the defendant and the other alleged conspirators. *See, United States v. Crayton*, 357 F.3d 560, 567 (6th Cir. 2004) ("[T]he acquittal of all but one co-conspirator during the same trial does not necessarily indicate that the jury found no agreement to act.").

Here, evidence of Calloway's involvement in the drug conspiracy with his co-defendants Meadoweal and Jefferies was "overwhelming" as noted by the Sixth Circuit in its opinion on direct appeal. *Jefferies*, 457 Fed. Appx. at 481. The Court has set out the details of the evidence summarized on direct appeal. As the Sixth Circuit noted, the evidence of Calloway's guilt was indeed strong. Accordingly, a motion to dismiss the conspiracy count as to Calloway had no chance of success so that a claim of ineffective assistance of counsel based on this ground likewise is meritless. *See gen, Mendizabal v. United States,* case nos. 3:05–cr–010, 3:07–cv–256, 2011 WL 916371 at *7 (E.D. Tenn. Oct. 17, 2011)(" [C]ounsel was not ineffective for failing to make a frivolous motion to dismiss the conspiracy count.")

**Ground 4(6).**

Calloway claims that his trial attorney was ineffective because he did not attempt to challenge the admission of the recorded prison phone calls involving Calloway's co-defendant Meadoweal. Calloway insists that these recorded conversations were made in violation of the Wiretap Act, 18 U.S.C. §2511. This claim is specious. The very language of the Wiretap Act provides at 18 U.S.C. §2511(2)(d):

It shall not be unlawful under this Chapter for a person not acting under color of law to intercept a wire, oral or electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception….

18 U.S.C. §2511(2)(d).  *See, United States v. Hollern*, 366 Fed. Appx. 609, 612 (6th Cir. 2010) (discussing "consent" within the context of §2511(2)(d)).

If one party to a communication agrees to be recorded, either expressly or by implication, then no violation of the Wiretap Act has occurred.  *See, United States v. Workman*, 80 F.3d 688, 692-94 (2nd Cir. 1996).  Because each time that co-defendant Meadoweal made a phone call from the jail she was advised at the outset that her conversation was being recorded, Meadoweal's continuation of the phone call after such automated notice constituted consent to the recording of the call.  A consensually recorded call does not violate the Wiretap Act.

Further, to the extent that Calloway was not directly involved in the intercepted communication himself, it is doubtful that he could successfully assert standing to challenge the admission of such conversations.  Only an aggrieved person may move to suppress a communication that was unlawfully intercepted under the Act.  *See, United States v. Faulkner*, 439 F.3d 1221, 1223 (10th Cir. 2006) (citing 18 U.S.C. §2518(10)(a)).  An aggrieved person under the Act is defined to be "a person who was a party to any intercepted wire, oral or electronic communication or a person against whom the interception was directed." *Id*. (citing 18 U.S.C. §2510(11)).  This standing requirement as *Faulkner* explains is construed in accordance with traditional standing rules.  *Id*. (citing *Alderman v. United States*, 394 U.S. 165, 176 n. 9 (1969)).

For Calloway to establish standing he must show that (1) he was a party to the intercepted communication, (2) the wiretap efforts were directed at him, or (3) the interception took place on his premises.  *Faulkner*, 439 F.3d at 1223 (citing *United States v. Apple*, 915 F.2d

899, 905 (4th Cir. 1990)).  Because Calloway could not have established his standing under the

above requirements, and because the interception of the jailhouse conversations of Meadoweal

did not violate the provisions of the Wiretap Act, given her implicit consent, attorney Zorin did

not render ineffective assistance of counsel by his decision not to make a frivolous challenge to

the introduction of Meadoweal's recorded jailhouse phone calls.  *See Pinillos v United States,*

990 F. Supp.2d 83, 102 (D. Puerto Rico 2013)(rejecting claim of ineffective assistance based on

alleged violation of the Wiretap Act where one of the parties to the intercepted communication

had consented to the recording).


**Ground 4(7).**

Calloway next turns to the provisions of the Speedy Trial Act, 18 U.S.C. §§3161-3174.

He claims in this respect that attorney Zorin again was professionally deficient by his failure to

seek dismissal of the third superseding indictment for violation of the Speedy Trial Act

provisions.  Calloway claims specifically that the time limits of the Act expired following the

return of the superseding indictment, which Calloway insists "did not add any new charges."[63]

As the Government points out, this claim is factually incorrect as the superseding

indictment added an additional count.[64]  Further, Calloway's case was properly declared to be

complex by the District Court in its order on motions for an extension of time.[65]  The Sixth

Circuit on direct appeal, as noted by the Government, also considered Calloway's case to be a

complex one.  *Jefferies*, 457 Fed. Appx. at 474.  It therefore appears clear to the Court that the

provisions of 18 U.S.C. §3161(h)(7)(B)(ii) and (iv) were readily satisfied given the complex

[63] DN 364, Mot. to Vacate, p.22.
[64] DN 10, Indictment; DN 72, Superseding Indictment
[65] DN 82, Order.

nature of the charges and the facts related to them. *See, United States v. Williamson*, 319 Fed.

Appx. 734, 737 (where defendant's Speedy Trial Act arguments lacked substantial merit because

the court adequately explained its reason for the continuance, an objection would have been

futile so that counsel was not ineffective for failure to raise a speedy trial challenge); *Cruz-*

*Pagan v. United States*, Cas NO.s 01-0613CCC/06-206CCC, 2009 WL 890478 (D.P.R. Mar. 25,

2009) (same).


**Ground 4(8).**

In this part of ground 4, Calloway renews his claim of ineffective assistance of trial

counsel based on the alleged improper venue in the Western District of Kentucky. The Court has

fully addressed this claim. Venue was properly before the District Court for the Western District

of Kentucky. Consequently, Calloway's trial counsel was not ineffective for his decision not to

bring a frivolous challenge to the venue of the prosecution.


**Ground 4(9).**

Calloway continues his attack on the performance of his trial attorney in this claim. He

contends that after counts 2 and 4 of the third superseding indictment were dismissed against co-

defendant Ron Jefferies as part of Jefferies' plea agreement, attorney Zorin should have moved

to dismiss the same two counts as against Calloway. He explains in this respect that the

dismissal of the counts against his co-defendant meant that "there existed no foundation to

continue the prosecution of this petitioner…."[66]

Count 2 of the third superseding indictment charged Jefferies and Calloway with an

attempt to knowingly and intentionally possess with intent to distribute 5 kg or more of cocaine

---

[66] DN 364, Mot. to Vacate.

based upon the drug run to Houston made by Calista Shirley in June of 2006.[67]  Count 4 similarly charged all three defendants (Jefferies, Calloway and Meadoweal) with an attempt to possess with intent to distribute 5 kg. or more of cocaine based on Meadoweal's drug run to Sugarland, Texas in December of 2006.  Apparently, Calloway's position is that absent conviction of Jefferies on these particular counts, or at a minimum proof beyond a reasonable doubt of Jefferies' own guilt Calloway could not be convicted on them, either.

Calloway cites no legal authority in his motion to vacate for this underlying claim.  As the Government correctly points out, counts 2 and 4 of the third superseding indictment charged an attempt to possess with intent to distribute, not aiding and abetting as Calloway appears to assume.  All that was required for the Government to obtain a conviction against Calloway on each of these two counts was a substantial step towards the completion of the alleged offense, possession with intent to distribute cocaine, based on the two drug runs to Texas made respectively by Shirley and Meadoweal.  *See, United States v. Bilderbeck*, 163 F.3d 971, 975 (6th Cir. 1999).

As *Bilderbeck* explains, the Sixth Circuit has defined the term "attempt" in a "broad and inclusive manner."  *Bilderbeck*, 163 F.3d at 975 (quoting *United States v. Reeves*, 794 F.2d 1101, 1103 (6th Cir.), *cert. den'd*, 479 U.S. 963 (1986)).  A conviction for an attempted crime will be upheld where the Government has shown that the charged defendant intended to commit the criminal conduct at issue and took a substantial step in the commission of such charged criminal act.  *Id.* (citing *United States v. Shelton*, 30 F.3d 702, 705 (6th Cir. 1994).  A "substantial step" in this context includes "conduct strongly corroborative of the firmness of the defendant's criminal intent."  *Id.*  Further, as *Bilderbeck* explains, "A defendant may be found to have taken a 'substantial step' for the purposes of an attempt conviction though he or she has failed to gain

---

[67] DN 194, Third Superseding Indictment, p. 2, Ct. 2.

48

possession of drugs or 'sham' drugs." *Id.* (quoting *United States v. Pennyman*, 889 F.2d 104, 107 (6th Cir. 1989)).

No question exists in the Court's mind that the Government fully satisfied its burden of proof with respect to counts 2 and 4 of the third superseding indictment. Indeed, as the Sixth Circuit noted in its opinion on direct appeal, the proof of Calloway's guilt on all of the charges of conviction was "overwhelming." That proof has already been summarized by the Sixth Circuit, and that summary has been included in this report and recommendation. The Court will not repeat it. Certainly, the dismissal of counts 2 and 4 against Jefferies as part of his plea agreement does nothing to undermine that same proof. Any motion by Calloway's attorney to dismiss counts 2 and 4 of the third superseding indictment, therefore, would have been unavailing. Accordingly, because Calloway cannot show that he was prejudiced by the decision of his attorney not to file such a motion to dismiss, his claim of ineffective assistance of counsel in this respect likewise is meritless.

**Ground 4(10).**

The next claim of ineffective assistance of counsel raised by Calloway is based upon the failure of attorney Zorin to challenge the introduction of Calloway's tax returns at trial. Calloway insists that his tax returns which were seized during the search of his home, are both privileged and confidential. Calloway reasons that because he did not waive any privilege for the confidentiality of such returns, they were improperly admitted against him and a timely objection would have resulted in their exclusion from evidence. He further reasons in this respect that only had he been charged with a violation of the federal tax laws would such tax returns have been relevant and potentially admissible against him. Because he was not so

charged, he claims that the returns could only have been introduced against him, pursuant Rule 404(b) of the Federal Rules of Evidence as a form of uncharged misconduct.

Calloway's tax returns indeed were introduced against him at trial as Government Exh. 74A and 74B. The returns were introduced in order to demonstrate the disparity in Calloway's stated income and the amounts seized by law enforcement officials during the course of the investigation. As such, the returns were relevant and admissible. *See, United States v. Ingram*, 556 Fed. Appx. 203, 210-211 (4th Cir. Feb. 19, 2014) (admission of drug defendant's tax returns did not constitute plain error, nor violate Rule 404(b) where the Government properly sought to admit the returns to show that the defendant's financial means far exceeded his legal income, indicating that he had income from other sources such as drug sales, which he purposefully hid) (citing *United States v. Grandison*, 783 F.2d 1152, 1156 (4th Cir. 1986) ("It is clear that evidence of unexplained wealth is relevant in a narcotics prosecution as evidence of illegal dealings and ill-gotten gains."). Accordingly, as before, any effort by attorney Zorin to raise a Rule 404(b) challenge to the introduction of Calloway's federal tax returns would have been unsuccessful as such returns were properly admitted against Calloway. Because Calloway was not prejudiced in this regard, his Sixth Amendment claim against attorney Zorin fails again.

**Ground 4(11).**

This particular claim of ineffective assistance is based upon the alleged failure of attorney Zorin to seek an alibi jury instruction. The Court has discussed this particular argument in detail above. Calloway offers no new reasoning that would require further discussion by the Court. For the reasons previously explained, the failure of attorney Zorin to seek an alibi instruction did

not constitute ineffective assistance of counsel.  The Court's view on the matter remains unchanged.

**Ground 4(12).**

Calloway next claims that attorney Zorin rendered ineffective assistance by his failure to seek the dismissal of count 1 of the third superseding indictment, the conspiracy count. Calloway argues in this respect that the Government failed to prove the existence of an agreement to possess cocaine with intent to distribute, and therefore was "forced to resort to circumstantial evidence, which likewise, was absent from the equation."[68]  Calloway explains that an agreement to engage in the drug conspiracy was an essential allegation required in count 1, which therefore necessitated the Government establishing at trial an overt act by Calloway in furtherance of the alleged conspiracy so as to establish by his conduct his agreement to participate in it.  Because the Government supposedly failed to come forward with such an overt act, Calloway was not proven guilty of count 1, and attorney Zorin should have moved to dismiss it prior to the case going to the jury.

Calloway's argument simply ignores the proof presented at trial.  The Government established to the satisfaction of the jury that Calloway, driving separately, accompanied Meadoweal on her trip to Sugarland, Texas to transport the cocaine and cash ultimately seized from the Lincoln Town Car in Louisiana that December.  Meadoweal's immediate and repeated efforts to contact Calloway merely serve to underscore his substantial involvement in the drug conspiracy, as did the presence of the legal contract for the representation of Calista Shirley on her own drug charges from her earlier, failed efforts to similarly transport cocaine from Texas earlier that same year in June.  As noted above, the evidence against Calloway was so

---

[68] DN 364, Mot. p. 25.

compelling that the Sixth Circuit on direct appeal was moved to point out that, "There is strong circumstantial evidence of the existence of a conspiracy and Calloway's membership in that conspiracy." *Jeffries*, 457 Fed.Appx. at 483.

We share the same view as the Sixth Circuit. Calloway's arguments simply ignore much of the incriminating evidence introduced against him at trial. Therefore, this particular claim of ineffective assistance of counsel is meritless. No legitimate ground existed for Calloway's trial attorney to request a dismissal of count 1 based on an alleged failure of the Government's proof at trial. Such a motion would not have been fruitful.


**Ground 4(13).**

This particular claim of ineffective assistance raised by Calloway involves the alleged failure of his trial attorney to engage in plea negotiations with the Government. Calloway insists in his original motion to vacate that attorney Zorin did not seek to engage the prosecutors in such negotiations. His failure to do so, according to Calloway, runs afoul of *Lafler v. Cooper*, __U.S.__, 132 S.Ct. 1376, 182 L.Ed.2d 398 (2012) (defendant prejudiced by counsel's deficient performance in advising the defendant to reject a favorable plea offer and go to trial) and *Missouri v. Frye*, __U.S.__, 132 S.Ct. 1399, 182 L.Ed.2d 379 (2012) (defense counsel has a duty to communicate formal plea offers from the prosecution before any such offer expires).

Calloway has attached to his reply two of his own affidavits, the second of which addresses this argument.[69] In his second affidavit, Calloway alleges that attorney Zorin never told him that he should accept a plea offer, and he never told Zorin that he would not plead guilty.[70] Instead, according to Calloway, he told Zorin that he would accept a plea offer from the

_____

[69] DN 410, Reply, Exh. B.
[70] Id., p. 1, ¶¶1-2.

government, if it were "guaranteed."[71]  Zorin in response allegedly told Calloway that there was

no "guaranty" and that there was no advantage to pleading guilty, as opposed to going to trial,

because Calloway would still receive a life sentence even if he pled guilty due to his prior

criminal record and the "851 enhancement."  *See* 21 U.S.C. § 851.

       The Government in its response points out that attorney Zorin has provided his own

affidavit.  In that affidavit, Zorin explained that he engaged in repeated plea negotiations with the

Government, negotiations that he related to Defendant Calloway.  Attorney Zorin alleges that he

repeatedly urged Calloway to accept a plea offer from the Government without success.

According to Zorin, Calloway was determined to go to trial, despite Zorin's warning that

Calloway would likely be convicted if he did so.

       There is no material factual dispute that Calloway's trial attorney communicated the

Government's offer to Calloway in accordance with his professional duties under *Frye,* even

Calloway does not dispute this fact in his affidavit.  In fact, Calloway in his reply admits that

attorney Zorin brought him one plea offer from the government.[72]  The same affidavit shows that

it was Calloway who apparently insisted that he would not accept a plea bargain with the United

States unless a favorable sentence could be "guaranteed."  The plain language of Rule 11(c)(3) of

the Federal Rules of Criminal Procedure on judicial consideration of a plea agreement puts to

rest any notion that Calloway could have been "guaranteed" any particular sentence by entering

into a plea agreement with the Government.

       Subsection (c)(3)(A) of Rule 11 authorizes the District Court to accept or reject a plea

agreement entered into under Rule 11(c)(1)(A) or (C), or defer its decision until it has reviewed

the presentence report.  *Id.*  Thus, had Calloway entered into a plea agreement that contained a

---

[71]  Id.
[72]  DN 410, Reply, p. 36.

recommendation for a particular sentencing range or specific sentence, an 11(c)(1)(C) agreement, the trial court would have had no obligation to accept the agreement. Attorney Zorin was absolutely correct when he informed Calloway of this limitation under Rule 11(c)(3)(A). Calloway's admitted decision to condition his willingness to plead guilty pursuant to a plea agreement on a condition precedent that could not be satisfied does not support a claim of ineffective assistance of counsel. The face of Calloway's own affidavit negates his Sixth Amendment claim in this respect. In other words, irrespective of whether Zorin did or did not convey a plea offer to Calloway, Calloway's affidavit confirms that he would not have accepted it because it could not be "guaranteed."

Accordingly, this claim of ineffective assistance of counsel is meritless on its face and does not require an evidentiary hearing to resolve given that Calloway could not have been prejudiced even had Zorin supposedly failed to convey a plea offer, since Calloway's condition to accept such an offer could never be satisfied given the requirement of Rule 11. *See, United States v. Hampton,* 444 Fed. Appx. 583, 586-87 (3rd Cir. 2011)(no hearing required to reject claim of ineffective assistance of counsel based on errant prediction of sentence imposed pursuant to guilty plea where defendant was advised by the court that there were no guarantees as to the sentence he would receive). *See gen., Valentine v. United* States, 488 F.3d 325, 333 (6th Cir. 2007), *cert.* denied, __U.S.__, 128 S.Ct. 1311, 170 L.Ed.2d 127 (2008); *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) ("[N]o hearing is required if the petitioner's allegations cannot be accepted as true because they are contracted by the record, inherently incredible, or conclusions rather than statements of fact.").

**Ground 4(14).**

In this ground, Calloway continues his Sixth Amendment challenge to the assistance of his trial attorney with an allegation that attorney Zorin was ineffective when he failed to object to the aiding and abetting jury instruction given at trial. Calloway claims that this particular instruction "robbed" him of his alibi defense. In other words, his view is that absent such an instruction, the jurors could well have believed that he did not follow Luciana Meadoweal to Texas and back, and therefore would have acquitted him. Calloway insists that his trial attorney should have objected to the instruction, citing *United States v. Ragghinti*, 560 F.2d 1376 (9th Cir. 1972) and *United States v. Eastridge*, 372 F.Supp.2d 26, 55-57 (D.D.C. 2005).

Count 3 of the third superseding indictment charged both Calloway and Jefferies with knowingly aiding and abetting one another and others to travel in interstate commerce from Kentucky to Texas with the intent to facilitate an unlawful activity-- their business enterprise involving possession with intent to distribute cocaine on or about June 8 and June 14, 2006.[73] Count 5 of the same indictment charged all three defendants with a similar violation of the Travel Act, 18 U.S.C. §1952, based on the December 2006 trip by Meadoweal from Kentucky to Texas in an effort to possess with intent to distribute cocaine in violation of 21 U.S.C. §§841(a)(1), 841(b)(1)(A)(II). It was these two counts, counts 3 and 5, of the third superseding Indictment that were the basis of the aiding and abetting instruction now challenged by Calloway in the context of his claim of ineffective assistance of counsel.

The problem for Calloway with this particular argument is pointed out by the Government in its response. The alibi testimony offered at trial simply did not rule out Calloway's participation in the charged defenses. Because Calloway was charged with aiding and abetting travel in interstate commerce to commit the offense of possession with intent to

---

[73] DN 194, Third Superseding Indictment, p. 3, Ct. 3.

distribute cocaine, the jury was not required to believe that Calloway himself accompanied Meadoweal in order to convict him of the Travel Act violations alleged in counts 3 and 5 of the indictment. *See, United States v. Alsobrook*, 620 F.2d 139, 141-142 (6th Cir. 1980) (defendant Rolls properly convicted of aiding and abetting interstate travel to commit gambling offenses although he did not travel from Michigan to California, but rather was aware of and assisted his co-defendant, Alsobrook, in his legal gambling activities).

An objection to the aiding and abetting instruction, based on Calloway's claim that he did not accompany Meadoweal on her December trip to Texas in 2006, therefore would have been pointless since the jury properly could have convicted Calloway of a violation of the Travel Act even had it believed that he did *not* accompany Meadoweal despite the Government's evidence strongly indicating that he did so in a separate vehicle. The result of this conclusion is that attorney Zorin could not have succeeded had he so objected to the aiding and abetting instruction on counts 3 and 5 of the third superseding indictment. His performance was not defective, and Calloway was not prejudiced by the absence of an objection to the aiding and abetting instruction. *See Melo v. United States,* 825 F. Supp.2d 457, 464 (S.D.N.Y. 2011)(trial counsel's decision not to object to the aiding and abetting instruction given by the trial court was not ineffective assistance where any such objection would have been overruled).


**Ground 4(15).**

Calloway turns next to the trial testimony of Special Agent Tremaine as the basis for his next claim of ineffective assistance of trial counsel. Calloway appears to argue that the testimony offered by Agent Tremaine concerning the recorded jailhouse phone calls was inadmissible because the recording of such phone calls violated the provisions of the Wiretap

Act, 18 U.S.C. §2518, *et seq*. Calloway insists that the recorded phone call between Calista Shirley and Calloway was not admissible and therefore Agent Tremaine should not have been permitted to testify concerning such calls except for the incompetence of Calloway's trial attorney.

The Court has previously addressed the Wiretap Act arguments made by Calloway. Admission of the recorded jailhouse phone conversations did not violate the provisions of the Wiretap Act. The conversations were recorded with the knowledge of the participants and therefore did not violate the Act, as more fully explained above. Further, to the extent that Calloway was not personally involved in any such conversations, or the object of the interception, he lacks standing to raise such a challenge as previously explained. For these reasons, his claim of ineffective assistance of counsel in this respect remains meritless.


**Ground 4(16).**

Calloway continues in this argument to focus on certain testimony of Agent Tremaine. In particular, he protests that Agent Tremaine improperly testified at trial concerning the identification of Calloway's voice on a recorded jailhouse conversation. Calloway maintains that Agent Tremaine was never established to be an expert in voice recognition and therefore could not have given such testimony under Rule 702 of the Federal Rules of Evidence, except for the failure of Calloway's attorney to timely object.

Once again, Calloway's arguments are unpersuasive. Agent Tremaine did not testify as an expert on voice recognition. Indeed, Calloway's own attorney on cross-examination established that Agent Tremaine was not a voice recognition expert. Instead, Agent Tremaine simply offered an opinion based upon having heard Calloway's voice in the past that the voice

on the recorded conversation was that of Calloway. *See* Fed. R. Evid. 701(a)(allowing lay opinion testimony based on the perception of a witness)

Such testimony is more specifically provided for by Fed.R.Evid. 901(b)(5). *See United States v. Cooke*, 795 F.2d 527, 530 (6th Cir. 1986) (as quoted in *United States v. Simms*, 351 Fed. Appx. 64, 69 (6th Cir. 2009)). *See, United States v. Mitchell*, 104 Fed. Appx. 544, 548 (6th Cir. 2004) (Where witness testified that he was very familiar with the defendant's voice because the law enforcement witness had monitored dozens of phone calls coming out of the jail to the defendant's phone, the opinion testimony of the officer was properly admitted at trial.). Because Agent Tremaine did not improperly testify as an expert witness, an objection on this basis would not have precluded his testimony that he recognized Calloway's voice so that the failure to raise such an objection was not ineffective assistance of trial counsel.

**Ground 4(17).**

Calloway focuses next on the testimony at trial concerning threats made to the owner of the auto body shop, Steve Power, who had a gun put to his head and was told that he would be killed if he testified at trial against the Defendants. Calloway maintains that he was never shown to be associated in any fashion with the threat made by the unknown individual against Power. Therefore, such testimony should not have been admitted at trial against him, and would not have been, except for the ineffective assistance of attorney Zorin.

This very argument was considered by the sixth Circuit on direct appeal. *Jeffries*, 457 Fed. Appx. at 481. The Sixth Circuit indeed did conclude that insufficient evidence was offered at trial to link Calloway to the death threat made against potential witness Power. The Sixth

Circuit, however, concluded that the erroneous admission of the threat did not rise to the level of plain error as there was relatively little mention of the threat during the extended trial and the evidence that linked Calloway to the drug conspiracy was "overwhelming." *Id.* The Sixth Circuit continued to add that the erroneous admission of the evidence concerning the threat did not affect the outcome of the trial proceedings. *Id.* Because that is so, Calloway cannot now successfully argue that he was prejudiced by attorney Zorin's failure to challenge the testimony concerning the unknown individual's threats to the body shop owner.

In other words, even if we assume that attorney Zorin's performance in this respect was deficient under *Strickland*, it simply did not create a reasonable probability that the outcome of the proceedings at trial would have been any different. In other words, Calloway would have been convicted even had attorney Zorin successfully challenged this otherwise improperly admitted testimony.

**Ground 4(18).**

Calloway next focuses on the statements of the prosecutor at trial. During the trial proceedings, the prosecutor argued that the physical cellphone found in Calloway's possession at the time of his arrest was the same cellphone that had been assigned the phone number (502) 457-2630, the number that Meadoweal had contacted following her arrest in Louisiana on December 18. Calloway protests that no foundation was ever laid by the Government at trial to establish this connection between the cellphone recovered from his person and the critical phone number involved in the alleged drug conspiracy. Because attorney Zorin did not object to the prosecutor's foundationless testimony, Calloway now argues that trial counsel once again was ineffective.

The problem with this argument is that it rests upon a claim of error that was considered and rejected on direct appeal by the Sixth Circuit, as the Government correctly notes. The Sixth Circuit in its opinion in *Jefferies*, 457 Fed. Appx. at 481-42 held:

> Calloway's [Rule] 602 argument regarding the cellphone also fails. Calloway alleges that the prosecution and some witnesses were allowed to refer to a cellphone found on his person as having the number 502-457-2630, without providing a foundation for this knowledge. However, a substantial foundation was laid to link to that cellphone number, even if not the cellphone itself. From prison, Meadoweal called her daughter and asked her if she knew "Rick's" number. Her daughter then provided the number 502-457-2630. That very same number had been tracked moving south from Louisville to the Houston area and was displayed on Calloway's luggage tag, which was found in his home. On this record, we fail to see any lack of foundation. And if there was error, it certainly did not affect the outcome of the trial and was therefore not plain. *See, Bailey*, 488 F.3d at 368.

*Jefferies*, 457 Fed. Appx. at 481-82.

Because the Sixth Circuit held that an adequate foundation had been established at trial, Calloway cannot now raise a successful claim of ineffective assistance of counsel based upon this alleged non-error. Any effort by attorney Zorin to object based upon lack of foundation would not have been successful as the Sixth Circuit previously explained. A meritorious Sixth Amendment claim therefore cannot be made on this point. Calloway was not prejudiced by attorney Zorin's election not to object based on lack of foundation. *See Bramblett v. True,* 59 Fed. App'x. 1, 7 (4th Cir. 2003)(rejecting claim of ineffective assistance of counsel for failure to challenge the foundation of certain testimony where such objection would have been futile); *Cuevas v. Henderson,* 801 F.3d 586, 591 (2nd Cir. 1986)(rejecting claim of ineffective assistance of counsel based on failure to object to the foundation of witness's testimony impeaching alibi witness, where prosecutor had laid proper foundation).

**Ground 4(19).**

Calloway returns to the Travel Act charges of the third superseding indictment for his next claim of ineffective assistance of counsel. In this claim, Calloway insists that attorney Zorin again should have moved to dismiss the Travel Act charges because the evidence offered at trial did not support them. What the Government proved, according to Calloway, was only at worst sporadic activity that was insufficient to constitute a continuous course of conduct as required by 18 U.S.C. §1952. In other words, Calloway maintains that proof merely of a single trip for an unlawful purpose is not sufficient to support a Travel Act conviction. He cites as support for this contention *United States v. Corona*, 885 F.2d 766, 770-71 (11th Cir. 1989) and *United States v. Corbin*, 662 F.2d 1066 94th Cir. (1981).

The incriminating evidence offered at trial, contrary to Calloway's current claims, showed far more than "sporadic" conduct in support of the Travel Act charges. The United States presented proof beyond reasonable doubt that connected Calloway to multiple efforts to transport cocaine from Texas to Louisville. Within less than six months, both Shirley and Meadoweal were apprehended while attempting to transport large amounts of cocaine and cash in automobiles obtained in Louisville. The continuous nature of this effort to smuggle cocaine is circumstantially established by the fact that defendants arranged for a permanent, hidden compartment to be custom-made for the trunk of the Lincoln Town Car that Meadoweal was driving when she was arrested in Louisiana.

That evidence, along with the other evidence discussed above shows far more than merely "sporadic" activity. Moreover, even if the Government had shown only Calloway's involvement in a single trip to Texas, such evidence would have been sufficient to satisfy the

requirements for a Travel Act conviction so long as the criminal enterprise itself was a continuing one.

Indeed, even the decision cited by Calloway, *United States v. Corbin*, 662 F.2d 1066, 1073 n.16, makes this observation. *See also, United States v. Moore*, 462 Fed. Appx. 289, 291-92 (4th Cir. 2012) (evidence that third persons traveled in interstate at the defendant's direction to deliver to him the proceeds of his illegal activity was sufficient to establish a violation of the Travel Act which does not require "interruption-less activity."); *United States v. Saget*, 991 F.2d 702, 712 (11th Cir. 1993) ("If a defendant engages in a continuous course of cocaine distribution rather than a sporadic or casual course of conduct, then the statutory requirement of a business enterprise involving narcotics is satisfied, and the single incident of interstate travel to carry on or facilitate that enterprise violates the statute.").

The Government correctly notes that the District Court at trial instructed the jury on the Travel Act counts that proof of a continuous course of conduct or series of transactions for the purpose of profit rather than casual, sporadic or isolated activity must be shown beyond reasonable doubt for the defendants to be convicted under the Travel Act. The jury therefore was well aware of this requirement and so found the defendants, including Calloway, to be guilty.[74]

**Ground 4(20)**

Calloway further argues that attorney Zorin should have sought the dismissal of the substantive drug charges against Calloway, counts 2 and 4 of the third superseding indictment. Calloway's reasoning is that the proof offered at trial failed to establish his actual possession of the cocaine involved, but rather showed only at worst constructive possession. Such constructive

---

[74] DN __, Jury instructions, pp. 13-14, 17-18.

possession, according to Calloway, will not support conviction on the aforementioned counts. The jurors therefore were left with mere speculation "inference on inference" that Calloway possessed the cocaine with the specific intent to distribute the same when no evidence connected him to the actual possession. Under such circumstances, Calloway maintains that at most he could possibly have been convicted of conspiracy to possess with intent to distribute cocaine, but not the underlying substantive offense of possession with intent to distribute.

Calloway's arguments fail to appreciate the nature of counts 2 and 4 of the third superseding indictment. The two affected counts charged Calloway with attempted possession.[75] Because only an attempted possession was charged, the Government did not have to prove Calloway's actual or constructive possession of the cocaine seized from Shirley's or Meadoweal's respective vehicles in order to convict Calloway under counts 2 and 4 of the indictment. *See, Bilderbeck*, 163 F.3d at 975. All that the United States was required to prove beyond a reasonable doubt at trial was Calloway's substantial step towards the possession of the cocaine.

The proof offered by the Government, particularly the cellphone tower proof and the Love's Country Store receipt, which established that Calloway accompanied Meadoweal on the December trip to Texas where Meadoweal obtained a substantial amount of cocaine and cash recovered from her vehicle, readily established a substantial step by Calloway towards the possession of such cocaine. As a result, Calloway's claim of ineffective assistance of counsel, which rests upon the premise of a successful motion to dismiss counts 2 and 4 of the third superseding indictment, is unpersuasive in view of the actual nature of those two counts.

---

[75] DN 194, Third Superseding Indictment, Cts 2, 4.

**Ground 4(21).**

Calloway in this claim of ineffective assistance of trial counsel focuses upon his warrantless arrest by police following their search of his Oakburn Drive home. Calloway protests that the officers had no probable cause on which to arrest him as he had not committed any felony in their presence at the time of his arrest. The arrest therefore was unreasonable under the Fourth Amendment and Calloway's trial attorney should have moved to suppress all items and statements obtained from Calloway following his unlawful, warrantless arrest.

The fatal flaw in this argument is that the arresting officers clearly had probable cause to make a warrantless arrest of Calloway at the time he was taken into custody. The same officers had just finished searching Calloway's home. They were aware that Calloway was a convicted felon and therefore could not lawfully possess a firearm. Yet, two firearms had been discovered hidden in the master bedroom closet in the home of a convicted felon. The arresting officers therefore clearly had a substantial factual basis to conclude that Calloway was immediately subject to arrest on the charge of being a convicted felon in possession of a firearm.

As the Government notes, the arrest of a suspect without a warrant will not violate the Fourth Amendment when the arresting officers have an objectively reasonable belief that the defendant has violated the law. *See, Criss v. City of Kent*, 867 F.2d 259, 262 (6th Cir. 1988). Because Sgt. Det. Crowell was aware of Calloway's prior conviction for felony drug trafficking, and further was aware that firearms had been seized from the master bedroom closet of Calloway's Oakburn Drive home upon the execution of the search warrant, probable cause existed to make a warrantless arrest of Calloway, who was then searched as part of a lawful search incident to arrest. *United States v. Robinson*, 414 U.S. 218 (1973). A motion to suppress

the evidence seized from Calloway therefore would not have been successful and Calloway was not prejudiced by attorney Zorin's actions in not making such a motion.

**Ground 4(22).**

This particular claim of ineffective assistance of counsel is merely a restatement of earlier evidentiary arguments related to the admission of the various documents seized from Calloway's home. The Court previously has discussed the nature of the documents and their relevancy to the charged offenses. The documents (wire transfer slips, attorney representation agreement, tax records, luggage tag, airline tickets, Western Union forms and bank records) were all properly admitted against Calloway. No ineffective assistance of counsel occurred by their admission at trial. Any effort by attorney Zorin to exclude the identified documents would not have succeeded. Accordingly, Calloway's claim of ineffective assistance based on the admission of the above documents also is not persuasive.

**Ground 4(23).**

Calloway in his final claim of ineffective assistance of counsel maintains that the cumulative attorney errors denied him due process of law and resulted in an unfair and unreliable outcome at trial in violation of the Fifth Amendment. *See United States v. Willoughby,* 742 F.3d 229, 239-40 (6th Cir. 2014)(To obtain relief on a claim of cumulative error the movant much show that "the combined effect of individually harmless errors was so prejudicial as to render his trail fundamentally unfair.")(quoting *United States. Trujillo,* 376 F.3d 593, 614 (6th Cir. 2004)).The problem for Calloway with this argument is that no Sixth Amendment errors have been found, much less an accumulation of them. Put differently, a multiple of zero remains just

that - - zero.  The Court must as a result reject his claim of cumulative error.  Calloway's trial was not fundamentally unfair so as to violate due process in any respect.

**Taking Without Just Compensation.**

Calloway argues in ground 5 of his motion to vacate that certain documents, appliances, photographs, records and U.S. currency were taken from him as part of the investigation.  These items, according to Calloway, have not been returned nor has he received any compensation for them from the Government.  Calloway notes in this respect that count 9, the forfeiture count contained in the third superseding indictment has been dismissed.  No similar forfeiture proceedings for the above-mentioned property are pending before the Court.  Consequently, Calloway now demands the return of his personal property including the $80,000 in cash seized from the hidden compartment of the Lincoln Town Car driven by Luciana Meadoweal on December 18, 2006.

The challenge for Calloway with this argument is that it may not be considered by the federal courts in the context of a motion to vacate filed under 28 U.S.C. §2255.  Section 2255 applies to those prisoners who maintain they have a right to release from custody because they are being held in violation of the federal Constitution or other federal law.  *United States v. Watroba*, 56 F.3d 28, 29 (6th Cir. 1995).  An effort to recover money or property, apart from a challenge to one's confinement, will not support §2255 relief.  *See, McGee v. United States*, 2010 WL 310770 at *2 (W.D. Mich. Jan. 21, 2010) ("A §2255 petition may not be used to challenge penalties merely collateral to imprisonment, such as fines and forfeiture of property.") (citing *Watroba*).  We therefore are unable to address this argument in the context of the present §2255 motion to vacate.  Further, as the Government points out, the $80,000 removed from the

hidden compartment of Meadoweal's Lincoln Town Car was not taken by the U.S. Government and is not apparently in the possession of the U.S. Government. According to the response of the United States, it is Louisiana law enforcement officers who have possession of these monies. Any claim for the recovery, therefore, must be directed to Louisiana rather than the United States.

**Unlawful Sentence Enhancement.**

In ground 6 of his §2255 motion, Calloway challenges the "career offender" sentence enhancement imposed on him pursuant to 21 U.S.C. §841(b)(1)(A). According to Calloway, he was entitled to have the jury determine whether two prior qualifying drug trafficking convictions had been returned against him sufficient to support the "career offender" status and resulting sentence enhancement. Unfortunately for Calloway, he has previously and unsuccessfully raised this exact claim on direct appeal.

In *Jefferies*, 457 Fed. Appx. at 483-84, the Sixth Circuit concluded that his life sentence was not imposed in violation of *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), which remains good law according to the recent decision *United States v. Nagy*, Case No. 3-4151, 2014 WL 3632362 (6th Cir. July 24, 2014). Because the argument was raised on direct appeal, Calloway cannot have a "second bite of the apple" by raising the same argument in the context of his §2255 motion to vacate. Accordingly, the Court rejects this ground as well.

The only remaining questions are whether Calloway is entitled to an evidentiary hearing or a certificate of appealability as to any ground raised in his petition. The Court concludes that the answer to both questions is negative. First, he is not entitled to an evidentiary hearing as there are no genuine issues of material fact. The face of the record completely refutes

Calloway's many claims of ineffective assistance of counsel. The multiple unsworn declarations offered in support of his reply raise no genuine issues of material fact as to any of these ineffective assistance claims. His remaining claims are not appropriately raised, or have been previously raised, in the present §2255 motion. The result is that an evidentiary hearing would serve no purpose as the existing record fully refutes all of his claims to relief under §2255.

The fact that Calloway now apparently wants to tell his side of the story as to the underlying substantive drug offenses misses the mark. The time for such testimony has come and passed. The only testimony that possibly would be relevant in the present context of Calloway's 2255 motion would be testimony that could not have been taken at trial. In other words, testimony about material facts in dispute related to claims of ineffective assistance of trial counsel, not Calloway's mere denial of his knowledge of or involvement in the charged offenses.

Because the material facts involving Calloway's many Sixth Amendment claims of ineffective assistance of trial counsel are not genuinely disputed, but are resolved against him on the face of the record, he is not entitled to an evidentiary hearing. *See, Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)("[N]o hearing is required if the petitioner's allegations 'cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.")(quoting *Engelen v. United States,* 68 F.3d 238, 240 (8th Cir. 1995)); *United States v. Stokes*, case nos. 1:10-CR-439/ 1:12-CV-837, 2013 WL 5566730 at *4-5 (N.D. Ohio 2013)(same).

**Certificate of Appealabiltiy**.

The final question is whether Calloway is entitled to a certificate of appealability (COA) pursuant to 28 U.S.C. § 2253(c). A state or federal prisoner who seeks to take an appeal

from the dismissal of a habeas corpus petition or a motion to vacate must satisfy the COA requirements of 28 U.S.C. § 2253(c). A COA will be issued only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).

Such a substantial showing is made when a prisoner establishes that jurists of reason would find it debatable whether the petition or motion states a valid claim of the denial of a constitutional right or, in the cases in which the petition is resolved based upon a procedural ruling, that jurists could find it debatable whether the district court was correct in its procedural ruling. *See Porterfield v. Bell*, 258 F.3d 484, 485-86 (6th Cir. 2001). The Court is required to make an individual assessment of the issues and to indicate which specific issue or issues satisfy the standard of § 2253(c). *See Stanford v. Parker*, 266 F.3d 442, 450-51 (6th Cir. 2001), *cert. denied*, 537 U.S. 831 (2002). *See also Slack v. McDaniel*, 529 U.S. 473, 483 (2000) (discussing 28 U.S.C. § 2253(c)). A federal or state prisoner may raise on appeal only those specific issues for which the district court grants a certificate of appealability. *Powell v. Collins*, 332 F.3d 376, 398 (6th Cir. 2003).

Here, Calloway has failed to make the required showing. He cannot make a substantial showing of the denial of a federal constitutional or statutory right. Although Calloway has raised an extraordinary number of claims, particularly claims of ineffective assistance of trial counsel, none of these claims has substantial merit. Many are conclusory, based on fundamental misconceptions of the law and are simply refuted by the record of the court proceedings and by Calloway's own affidavit at least as to his plea agreement-related claim of ineffective assistance of counsel.

No compelling evidence has been cited in support these claims, nor does Calloway establish any entitlement to an evidentiary hearing on any claim. Extensive review of his many

claims fails to reveal a substantial showing of the denial of a constitutional right. Reasonable jurists could not debate the correctness of the Court's decision on those claims that are procedurally barred because they either were not raised on direct appeal, when they could have been, or were so raised and were rejected on their merits. Accordingly, the Magistrate Judge recommends that a COA be denied as to Calloway's statutory and constitutional arguments in their entirety.

## RECOMMENDATION

The Magistrate Judge having made findings of fact and conclusions of law recommends that the motion to vacate filed by the Defendant be **DISMISSED WITH PREJUDICE** and that he be denied a certificate of appealability as to all grounds raised as he has failed to make a substantial showing of the denial of a constitutional right or to establish that jurists could reasonably debate the correctness of the Court's ruling as to those issues procedurally barred from review.

## NOTICE

Within fourteen (14) days after being served a copy of these proposed Findings and Recommendation, any party who wishes to object must file and serve written objections or further appeal is waived. *Thomas v. Arn,* 474 U.S. 140, 150-51 (1985); 28 U.S.C. § 636(b)(1)(c); Fed. R. Crim. P. 59(b)(2); Fed. R. Civ. P. 72(b)

Copies to Counsel of Record