UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

RICKEY CALLOWAY                                                PETITIONER

v.                                      CIVIL ACTION NO. 3:13CV-75-CRS
                                        CRIMINAL ACTION NO. 3:07CR-25-CRS

UNITED STATES OF AMERICA                                       RESPONDENT

### MEMORANDUM OPINION

This matter is before the court for consideration of the Findings of Fact, Conclusions of
Law, and Recommendation of the United States Magistrate Judge (hereinafter the "Report") that
petitioner Rickey Calloway's petition seeking to vacate, set aside, or correct his sentence
pursuant to 28 U.S.C. § 2255 be denied (DN 411).   The court has considered Calloway's
objections to the Report (DN 415) and conducted a *de novo* review of the record and those
portions of the Report to which he has objected.   For the reasons set forth below, the Report of
the magistrate judge will be accepted and adopted in its entirety with one exception,[1] and
Calloway's petition will be denied.

Calloway was convicted in this court in 2009 of various drug offenses and being a
convicted felon in possession of a firearm.   At sentencing, he was found to be a career offender
and received a life sentence as to four counts of the six counts of conviction.   He was acquitted
by the jury of two counts charged in the Third Superseding Indictment.   Calloway's co-
defendant, Luciana Meadoweal also proceeded to trial and was convicted on all counts charged

---

[1] The court has found one paragraph in the magistrate judge's Report which must be excised.  *See* Subsection C
herein.

against her.   Co-defendant Ronald Jefferies entered into a plea agreement whereby he plead guilty to three counts of the Third Superseding Indictment.

At sentencing, Calloway unsuccessfully challenged the imposition, pursuant to 21 U.S.C. § 851, of a life sentence.  The sentence was confirmed by the United States Court of Appeals for the Sixth Circuit along with the convictions and sentences of his co-defendants.

Calloway filed a motion seeking a new trial based on purportedly newly discovered evidence, urging that the state court judge's signature on the search warrant for 7219 Oakburn Drive had been forged.  He was unsuccessful on this motion and also on the appeal of this court's decision that the claimed "forgery" was not newly discovered evidence.

Calloway then filed the current petition to vacate pursuant to 28 U.S.C. § 2255. Calloway has raised six grounds for relief.  On referral of the petition for consideration by the magistrate judge, none of the grounds raised were found to be meritorious.

The magistrate judge filed a thorough and well-reasoned report.  We will quote from the appellate decision in this case, as did the magistrate judge, to provide some factual context:

> On January 21, 2009, a grand jury returned a nine count superseding indictment charging Jefferies, Calloway, and Meadoweal with various criminal offenses related to a drug trafficking operation. Count One charged all three defendants with conspiracy to possess with intent to distribute more than five kilograms of cocaine in violation of 21 U.S.C. § 846. Count Four charged all three defendants with possession with intent to distribute in violation of 21 U.S.C. § 841(a)(1), and Count Five charged all three defendants with traveling in interstate commerce to commit their drug crimes in violation of 18 U.S.C. §§ 1952(a)(1) and (a)(3). These substantive counts related to cocaine found in the trunk of a car that Meadoweal drove to Houston.
>
> Counts Two and Three charged Calloway and Jefferies with violations of 21 U.S.C. § 841(a)(1) and 18 U.S.C. §§1952(a)(1) and 1952(a)(3) related to a drug run that Calista Shirley, who is not a party in this case, made to Houston. Counts Seven and Eight charged Calloway and Jefferies with possession of more than five grams of crack and more than 500 grams of cocaine with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1). These two counts related to drugs found at a "stash house" that

Jefferies rented on Middle Lane in Louisville, Kentucky. Count Six charged Calloway alone with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Count Nine, seeking forfeiture, is not relevant to this appeal.

A jury found Calloway guilty on Counts One through Six. The jury found Meadoweal guilty on Counts One, Four and Five. Instead of going to trial, Jefferies pled guilty to Counts One, Seven and Eight, but reserved the right to appeal the denial of his motion to suppress. The district court sentenced Calloway to life in prison, Meadoweal to 120 months of imprisonment, and Jefferies to 204 months of imprisonment.

## A.

The facts of this drug conspiracy case are complex. In late 2006, Jefferies took a Lincoln Town Car to an auto shop in Louisville, Kentucky to have a hidden compartment installed in the trunk. Louisville police were tipped off and obtained a warrant to place a GPS tracking device on the car. The police posed as firemen needing to investigate a gas leak in the auto shop, entered the premises, and placed a GPS device on the Lincoln, without the knowledge of the shop's owner.

After the hidden compartment was installed and the Lincoln returned to Jefferies, police tracked the car to a house on Middle Lane which Jefferies, police later discovered, was renting. Police also visually observed the Lincoln at Middle Lane. The police further tracked the Lincoln to a house that Jefferies owned on Pinnacle Lane and to a house owned by Calloway on Oakburn Lane. The police tracking the Lincoln took particular note when the vehicle went southbound, leaving Louisville; they suspected that the driver had left town to complete a drug run. The Lincoln traveled to Sugar Land, Texas, near Houston, stayed less than 24 hours, and then began to return north. At that point in Louisville, a number of officers assembled and waited for the Lincoln to return. However, the Lincoln never returned to Louisville.

Rather, on December 18, 2006, when the Lincoln was returning from Sugar Land, a Louisiana police officer noticed that the Lincoln darted "evasive[ly]" into the right lane upon seeing him. The officer, further observing that the Lincoln was following the car in front of it too closely and had a license plate ring that partially obstructed the license plate, pulled over the vehicle. Meadoweal was behind the wheel.

Meadoweal claimed she had been visiting San Antonio and denied consent to search the vehicle. Another officer ran a canine around the car to check for narcotic odors, and the canine alerted on the trunk—indicating a positive odor of narcotics. The officers suspected a false compartment in the trunk but were unable to open it. After bringing the Lincoln to a substation and opening the false compartment, officers found approximately nine kilograms of cocaine smeared with mustard to mask the smell, plus $80,000. Portions of the interaction between the officers and Meadoweal were captured on video and played for the jury at trial.

Before bringing the car to the substation, officers noticed that Meadoweal had been talking on the phone with "Rick" (Calloway's first name), as that name appeared on

Meadoweal's cell phone. When asked who Rick was, Meadoweal responded that he was her boyfriend. Cell phone records introduced at trial showed that Calloway had traveled south from Louisville to the Houston area on the same day as Meadoweal and that the two had spoken on the phone while traveling to and returning from Sugar Land. On the morning of Meadoweal's arrest, Calloway also placed several phone calls to Jefferies.

After being arrested, Meadoweal attempted to contact Calloway from jail. Meadoweal called her daughter and asked her if she knew Rick's number. Her daughter provided Meadoweal with the number 502-457-2630—the same number that had been tracked moving south from Louisville to the Houston area—so that her daughter could contact Calloway. Meadoweal asked her daughter to call Calloway and give him four numbers of bail bondsmen. From jail, Meadoweal also talked to her brother to ask that Calloway pay her bond of $24,000.

## B.

The Louisville police officers who had placed the tracking device on the Lincoln soon learned that the driver had been arrested in Louisiana for drug possession. The officers then obtained and executed a search warrant for Calloway's house on Oakburn Lane. In the pocket of a jacket in Calloway's house, the officers recovered a receipt from "Love's Country Store," located about 30 miles from where Meadoweal was pulled over, and dated December 18, 2006, the same day that Meadoweal was arrested. Written on the back of this receipt were the four numbers of the bail bondsmen that Meadoweal had asked that Calloway contact. In the same jacket, officers found a Western Union receipt for $24,060—the amount of Meadoweal's bond plus fees. The officers also recovered $27,480 in cash and two firearms from Calloway's house, as well as a luggage tag on which the number 502-457-2630 was written.

Also in Calloway's house, officers discovered the driver's license of Calista Shirley. Shirley had been arrested outside of Houston in June of 2006 for possessing thirty kilograms of cocaine in her trunk. After Shirley's arrest, Calloway paid for Shirley's legal representation. Shirley was subsequently convicted of possession of more than five kilograms of cocaine with intent to distribute.

Officers arrested Calloway after searching his house. From jail, Calloway called Jefferies and instructed him to empty an account they held together. Shortly thereafter, a man identifying himself as Jefferies withdrew nearly $35,000 from the account, nearly emptying it.

## C.

Having arrested both Meadoweal and Calloway, and having searched Calloway's residence, officers then focused on Jefferies and the house on Middle Lane—which they suspected was the stash house. The officers suspected this residence because a neighbor had seen both Calloway's Hummer and the Lincoln parked on Middle Lane, and officers had independently observed the Lincoln on Middle Lane, both visually

and by using the GPS. The officers made contact with a neighbor, who promised to call when Jefferies returned to Middle Lane. When the neighbor called on February 5, 2007, police rushed to the Middle Lane residence but Jefferies had already left. Police soon found Jefferies at a nearby liquor store. Jefferies denied having just been near Middle Lane and twice denied knowing anything about Middle Lane. The officers then brought out their K-9, which alerted for a positive drug odor on Jefferies's clothing. After arresting Jefferies, officers did not find any drugs on his person, but they did find $6,500 in cash.

The officers then obtained and executed search warrants for Jefferies's vehicle and the Middle Lane residence. Inside the Middle Lane house, officers found crack and powder cocaine, several bags and wrappers with cocaine residue, digital scales, a pressing machine to make cocaine bricks, and adulterants used to dilute cocaine. The officers also found a Christmas card addressed to "Rickey," as well as a rental agreement for the Middle Lane property in Jefferies's name.

*United States v. Jefferies, et al.*, 457 Fed. Appx. at 473-475.

## I. Legal Standard

A prisoner seeking to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 must establish (1) that there was an error of constitutional magnitude, (2) that his sentence fell outside statutory limits, or (3) that a fundamental error of fact or law occurred which rendered the entire criminal proceeding invalid.  *United States v. Doyle*, 631 F.3d 815, 817-18 (6th Cir. 2011).  "A § 2255 motion may not be used to re-litigate an issue raised on appeal absent highly exceptional circumstances."  *Dupont v. United States*, 76 F.3d 108, 110 (6th Cir. 1996). Additionally, an issue which has been defaulted at trial or on direct appeal may not be litigated in a § 2255 collateral attack unless the defendant shows cause and actual prejudice.  *Murr v. United States*, 200 F.3d 896, 900 (6th Cir. 2000), *citing United States v. Frady*, 456 U.S. 152, 164-65 (1982).  Actual prejudice can be shown by establishing a reasonable probability of a different outcome on appeal had the issue been raised. *United States v. Fields*, No. 3:14CV-616-JGH,

2015 WL 1259050 (W.D.Ky. March 18, 2015), *citing United States v. Frady*, 456 U.S. at 164-65.

Calloway's most prevalent attack is directed to the effectiveness of his counsel at trial. Ineffective assistance of counsel claims fall within the "error of constitutional magnitude" category. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006). Such challenges must be addressed under the framework established by *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* set a high bar for proving ineffectiveness in trial counsel's performance. The defendant must show that the performance of his counsel was objectively unreasonable in light of prevailing professional norms, and that the errors were so serious that counsel was not functioning as "counsel" guaranteed by the Sixth Amendment. *Strickland,* 466 U.S. at 687. Additionally, defendant must show that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. Under *Strickland*, counsel is strongly presumed to have rendered adequate legal assistance. Review is not made from the perspective of hindsight, but rather in the circumstances as they existed at the time of the alleged error. "[T]he *Strickland* standard must be applied with scrupulous care, lest 'intrusive post-trial inquiry' threaten the integrity of the very adversarial process the right to counsel is meant to serve. *Strickland*, 466 U.S. at 689-90…" *Premo v. Moore*, ___U.S.___, 131 S.Ct. 733, 740 (2011).

## II.  Analysis

Quite a few of Calloway's objections to the magistrate judge's report merely rehash arguments made in his petition. Calloway simply disagrees with the magistrate judge's decision. The magistrate judge carefully, comprehensively, and correctly addressed each of Calloway's claims. Therefore, we need not belabor restated points. Where Calloway's objections contain

greater substance, however, we more fully address the issues herein.

## A.  7219 Oakburn Drive Search Warrant.

Calloway claimed that his rights to due process and effective assistance of counsel were violated by the execution of the search warrant for his home on Oakburn Drive as he alleges that Judge Geoffrey Morris' signature was forged on the warrant.[2]

The magistrate judge correctly concluded that Calloway's counsel was not deficient in failing to pursue a meritless avenue of attack, as Judge Morris affirmed by sworn affidavit that the signatures on the documents in this case are his.  Further, the magistrate judge properly found the attack on the validity of the warrant to have been doubly defaulted as Calloway failed to raise the issue on direct appeal, although he claimed that he told his attorney prior to trial  the warrant was forged.  After trial he did, in fact, unsuccessfully assert this argument in a motion for new trial.

## B.  Venue.

Calloway contends that there was no evidence establishing his involvement in Calista Shirley's or Luciana Meadoweal's Texas drug runs in June and December, 2006 respectively, and therefore Counts 2 and 4 of the Third Superseding Indictment relating to those trips could not be properly tried against him in Kentucky.  The magistrate judge properly concluded that the venue claim should have been raised on direct appeal, and that Calloway failed to show the

---

[2] Calloway sought to suppress various items seized as a result of the execution of that warrant, including a receipt from Love's Country Store on which there were handwritten phone numbers for Louisiana bail bondsmen, a wire transfer receipt for $24,000 in bail money supplied to Meadoweal, a copy of a legal services contract for Callista Shirley who was arrested in June, 2006 in possession of 30 kilograms of cocaine outside Houston, Texas, $27,480 in cash, and several firearms.

requisite cause and prejudice, despite Calloway's conclusory statement to the contrary.  Further, the magistrate judge found that Calloway's counsel was not ineffective for failing to raise the venue issue prior to trial inasmuch as he would have been raising a meritless argument.

The magistrate judge noted that the vehicles in which Shirley and Meadoweal were arrested were purchased at Square Deal Autos and originated in Louisville, Kentucky.  In a search of Calloway's home, police seized Shirley's Kentucky driver's license and retainer documents for an attorney for Shirley on the drug charges arising from her June 2006 arrest in Texas, a Love's Country Store receipt from Louisiana upon which were written the names of four bail bondsmen, and a Western Union receipt for $24,000 in bail money wired to Meadoweal.  The evidence also showed that Meadoweal left her personal car in Elizabethtown, Kentucky, prior to leaving for Texas and, upon her arrest, contacted family in Elizabethtown, obtaining Calloway's cellphone Louisville number from her daughter.

The magistrate judge concluded that the search of Calloway's Louisville home which yielded the items linking Calloway to the drug trafficking trips was valid, and found that the Government had satisfied its burden to establish venue in Kentucky.  He noted in the Report that the drug trafficking included acts perpetrated in furtherance of a transfer or sale, and that such an offense may be prosecuted in any district in which the offense was begun, continued or completed.

## C.  Alibi Instruction.

The magistrate judge correctly found that Calloway's allegation of Fifth and Sixth Amendment violations based upon his attorney's failure to obtain an alibi instruction from the court cannot be pursued by way of this motion to vacate, as the argument should have been

raised by Calloway on direct appeal, and he has failed to show cause and prejudice for the omission to do so.

Calloway also claims that his counsel was ineffective for failing to request an alibi instruction for the jury.  He offers two grounds for ineffectiveness in this regard.  First, he urges that at trial he offered "testimony clearly establishing that Rickey Calloway was in Louisville, Ky., at all times while Luciana Meadoweal was traveling to Houston, Texas, and returning." (DN 364, p. 12).  Second, he claims that counsel was ineffective for failing to call Stacy Todd as an alibi witness, as Todd's testimony, along with other testimony not offered from Jefferies and from Rickey Calloway's brother, Daniel Calloway, would have refuted the United States' evidence and Calloway would not have been convicted.  (DNs 410, pp. 17-19; DN 415, pp. 9-13).

In support of his arguments, Calloway offers affidavits from himself, Stacy Todd, Jefferies, and Daniel Calloway.  These are all recently minted affidavits.

Pertinent to the alibi issue, Calloway's own affidavits state that his counsel was "put on notice" that Jefferies and Meadoweal were willing to testify that Calloway knew nothing about travels to Texas to purchase cocaine.  He states that counsel did not utilize their proposed testimony and did not explain to Calloway why he did not.  He also states that Stacy Todd was present for the trial and was prepared to testify in Calloway's defense but was also not called as a witness by defense counsel.  Calloway states that he did not agree to the decision not to call Stacy Todd (DNs 410-2, 410-3).

Stacy Todd states in his affidavits that 502-457-2630 was his cell phone, that he was in possession of that phone, and that Luciana Meadoweal followed him to Texas because she did not know the way.  He states that he wrote the bail bondsmen's phone numbers on the Love's

~ 9 ~

Country Store receipt he had in his pocket and gave it to Rickey Calloway upon his (Todd's) return from Texas.  Todd states that he was the one who answered the cell phone daily and that people trying to reach Calloway would call his phone and Todd would inform Calloway.  Todd states that he was present during the trial and was ready to testify but was not called.  Todd states that he provided documents[3] showing that he had traveled to Texas from December 16-18, 2006.

Daniel Calloway states in his affidavit that he placed 2 pistols in his brother's closet, he was willing to testify at trial that he owned these firearms, but defense counsel never called him as a witness.

The United States has offered an affidavit of counsel in which he states, in pertinent part, that Todd told Calloway's counsel that he did not believe that he (Todd) could testify in any manner that would prove exculpatory to Calloway.  Counsel states that Todd appeared to be a reluctant and possibly damaging witness to Calloway's case if his testimony was not believed in light of the substantial evidence contradicting Todd's suggested testimony.  Counsel also indicated that because of the nature of the charges, Calloway may have been found guilty on all counts even if the jury believed Todd's testimony.  Counsel states that the decision not to call Todd as a witness was made based upon counsel's professional experience and understanding of the case, and with Calloway's knowledge and consent.

We find that the magistrate judge properly assessed the professional judgment exercised by counsel at the time and under the circumstances in which legal representation was provided.

Jefferies states in his affidavit that he was the one who asked Meadoweal and Shirley to make trips to Texas to transport cocaine.  He states that he told counsel that Calloway knew nothing about this and that he (Jefferies) would testify to that fact.  Jefferies' affidavit does not

---

[3] No documents were submitted with Todd's affidavits.

state when he so informed Calloway's counsel, but indicates that it was during a "conference" for trial preparation.  Calloway's first affidavit (DN 410-2) states that

> My attorney was put on notice that Ron Jeffries [sic] and Luciana Meadoweal were willing to appear at my trial as defense witnesses and explain the circumstances of her trip to Houston, Texas, at the time of the charge set forth in the indictment.  This occurred during a courthouse meeting in the month of January, 2009, when Ron Jeffries [sic], Luciana Meadoweal, and I were taken to the federal courthouse for a conference.

As noted by the magistrate judge, however, three months later and a mere five days prior to trial, Jefferies accepted a plea deal which allowed him to avoid a possible life sentence.  He pled guilty to, among other charges, conspiring with Calloway, Meadoweal, and others to possess with intent to distribute more than five kilograms of cocaine.  The plea agreement included the withdrawal of the 21 U.S.C. § 851 notice, thereby removing the possibility that Jefferies would receive a life sentence as an armed career criminal, and recommended a sentence of 202 months which included a three-level downward departure for acceptance of responsibility.  Jefferies' sentencing was scheduled to take place after the Calloway/Meadoweal trial.

The magistrate judge aptly noted that, had Jefferies testified on behalf of Calloway as suggested in his affidavit, he would in all likelihood have lost the highly favorable plea deal he received a mere five days prior to trial and would possibly face a perjury charge.  Further, testimony that Calloway did not know about the trips to Texas would likely not be believed in light of the wealth of evidence controverting this representation.  Such testimony offered on his behalf, if seen as untruthful, could most certainly be damaging to his defense.

There is no evidence that Jefferies' offer to testify in January was still viable after the negotiation of the highly favorable plea deal in April.  Further, if Jefferies was still willing to testify despite risking the implosion of the plea agreement, there were clear strategic reasons not

to call him at trial.  The magistrate judge cited numerous cases establishing that an attorney is not ineffective where there are risks inherent in offering certain testimony on behalf of a defendant. As a professional, counsel possess substantial latitude in assessing the best trial strategy under the circumstances.

Calloway contends in his affidavit that Meadoweal indicated in January 2009 that she was willing to testify on his behalf.  Meadoweal herself has not filed an affidavit to this effect. Assuming, however, that she so stated in January, there is no evidence that her offer of testimony remained open three months later.  Further, all of the same risks inherent in offering Jefferies' testimony in support of Calloway applied equally to Meadoweal's proposed testimony.  In the face of extensive evidence tying Calloway to the drug trafficking crimes, counsel was simply not ineffective in failing to offer such testimony.

Calloway challenges the decision not to call his brother to testify on his behalf.  Daniel states in his affidavit that he owned the two pistols seized from Calloway's home.  He claims that he placed them in Calloway's bedroom closet in the home under Calloway's clothes.  As noted by the magistrate judge, Daniel's testimony may have been viewed by the jury as biased due to the familial relationship, but more importantly, such testimony concerning ownership would not have exculpated Calloway from possessing the weapons as a convicted felon.  The magistrate judge correctly concluded that the failure to call Daniel was neither deficient nor prejudicial under *Strickland*.

With respect to the proposed testimony of Todd, we first look to the evidence that was offered at trial by the United States.  To establish that the cell phone associated with the number 502-457-2630 was Calloway's, the United States offered the fact that Meadoweal had the number programmed into her cell phone as "Rick." She stated that she called her "boyfriend"

when she was arrested, placing a call to that number.  That number was found on a luggage tag on a piece of Calloway's luggage in his house.  Rochelle Mitchell who testified for the defense volunteered on cross-examination that she called Calloway's cell phone and spoke with him on the morning of Meadoweal's arrest, calling the 457-2630 number.  The cell phone with that number was being tracked on a trip from Louisville to Texas and back at the time of Mitchell's call. Additionally, Meadoweal called a family member from a prison phone after her arrest requesting Calloway's number and was given the 457-2630 cell phone number.

Linking Calloway to Meadoweal's trip to Texas was the Love's Country Store receipt found in Calloway's jacket pocket in his house.  The receipt was from a Love's Country Store establishment in Louisiana with the phone numbers of bail bondsmen written on the back of it. Additionally, a Western Union receipt for payment of Meadoweal's $24,000 bond, Shirley's driver's license, a contract for legal representation of Shirley, a woman who had been arrested on a similar drug run a number of months earlier, and $27,480 in cash were found in Calloway's home.  Calloway takes issue with the admissibility of many of these items, but, for the reasons stated in this opinion, we find his various objections to be without merit.

It is against this backdrop of evidence that counsel determined that Todd should not be called as a witness for the defense.  Having called Mitchell, and Mitchell having testified that she had spoken to Calloway on the morning of Meadoweal's arrest, Todd's testimony that the cell phone was his and that he had it in his possession when he accompanied Meadoweal on the trip to Texas would have established that one story or the other was untruthful.  Mitchell testified that she spoke with Calloway on his cell phone on the morning of Meadoweal's arrest.  That phone was not in Louisville, however, but rather was en route from Texas.  Apparently, Mitchell was unaware of the fact that the 457-2630 had been tracked by law enforcement.  Thus, if Todd had

~ 13 ~

the cell phone on that trip and Calloway was in Louisville, Mitchell could not possibly have talked to him that morning as she said she did. On the other hand, if Mitchell did, in fact talk to Calloway on the phone that morning, Todd's testimony that he was on the Texas trip with that phone could not be true.

With the admission of Mitchell's testimony that she spoke with Calloway on the morning of Meadoweal's arrest en route from Texas to Louisiana, coupled with the wealth of evidence linking Calloway to the cell phone and the Texas trip, Todd's proposed testimony could clearly have proved damaging to the defense, and counsel might well have believed that he would be suborning perjury by calling Todd to the stand.  The decision not to call Todd as a witness was clearly within the realm of reasoned judgment by counsel in light of the circumstances.  The magistrate judge quite properly deferred to counsel's experience and knowledge of the particular facts of the case in concluding that there was no ineffective assistance of counsel nor was there prejudice to the defendant.

The testimony of Mitchell was the only shred of evidence at trial suggesting an alibi for Calloway.  This testimony was clearly called into question by her statement on cross-examination that she spoke to Calloway on his cell phone on the morning of Meadoweal's arrest, as that phone was being tracked and was shown not to be in Louisville at that time.  Therefore, Calloway had only the slenderest of reeds upon which to request an alibi instruction at trial.  The magistrate judge aptly noted that the United States' theory that Calloway traveled separately to Texas to accompany Meadoweal was thus actually supported by Mitchell's testimony, not contradicted by it.  She stated that she talked to Calloway on the phone that was being tracked to Texas and back.  Under the United States' theory, the Love's Country Store receipt places Calloway in Louisiana at 11:40 in the morning, making it likely untrue, if not impossible, for

~ 14 ~

Calloway to have been seen in Louisville by Mitchell between 2:00 and 5:00 pm on December 18.[4]   Counsel had every reason not to press further with this evidence by requesting an alibi instruction which would have directed the jury's attention to evaluate the relative strength of each piece of evidence offered in this regard.

The court therefore agrees with the magistrate judge's conclusion that counsel was not ineffective for failing to request an alibi instruction at trial.

The conclusions in this section of the opinion dispose of Calloway's contention in many other arguments herein that had the testimony of Todd, Jefferies, Daniel Calloway, and Meadoweal been presented, there would not have been "overwhelming" evidence against him at trial.  The court's determination that there was no error of constitutional magnitude in the failure to call these witnesses or to request an alibi instruction puts this weight of evidence argument to rest for all purposes for which Calloway raises it in his petition.

**D.  Love's Country Store Receipt, Tax Returns, Western Union Wire Receipts, and Airline Luggage Tag.**

The same analysis was applied by the magistrate judge to all of the above-listed items. (DN 411, p. 34).  He correctly rejected Calloway's argument that these items were required to be evaluated under Fed.R.Evid. 803(6) before their admission at trial.  However, as he properly determined that these items were offered only for purposes of linking the defendant "to a particular place, to other defendants, or to an illegal item"[5] and thus were not hearsay, the magistrate judge concluded that the 803(6) exception to the rule against hearsay did not apply.

---

[4] Cryptically, the magistrate judge surmises that Calloway could have driven back and arrived in Louisville late in the afternoon to be seen by Mitchell as she testified.  There was no suggestion to this effect.  Rather, the evidence offered by the  United States' supports the proposition that Mitchell's alibi testimony was simply untrue.  We will therefore excise the last paragraph on page 22 of the magistrate judge's Report.
[5] *United States v. Hathaway*, 798 F.2d 902, 906 (6th Cir. 1986).

Counsel was clearly not ineffective for failing to object to the admission of these items on this meritless ground.

**E.  GPS Tracking Data.**

A GPS tracking device was installed on the 1998 Lincoln Town Car driven by Meadoweal pursuant to a search warrant executed at Steve Power's auto body shop.  As Calloway had no ownership interest in either the body shop or the vehicle, nor did he have exclusive possession of the vehicle,[6] Calloway lacked standing to challenge the placement of the tracking device.  Calloway has articulated no reasonable expectation of privacy or any property interest in either vehicle.  Thus Calloway's counsel's failure to make a meritless suppression motion addressed to information obtained from the tracker did not constitute ineffective assistance of counsel.

**F.  Prior Criminal Offenses.**

The magistrate judge correctly discerned that testimony concerning Calloway's arrest and incarceration on December 19, 2006 and subsequent jailhouse calls made to Jeffries were properly admitted as evidence directly related to his arrest on the charges in issue.  This was not evidence of prior bad acts under Fed.R.Evid. 404(b) and thus need not have been put through that rule's rubric.  The magistrate judge correctly found that counsel was not ineffective for having failed to challenge the admissibility of the evidence of Calloway's incarceration and his jailhouse phone calls to Jeffries.

---

[6] Calloway cites in his objections to *United States v. Jones*, 132 S.Ct. 945, 949, n. 2 (2012) in urging that he has standing to make this challenge.  There was no question as to Jones' standing in that case as the United States conceded it.  Such is not the case here.

**G. Conspiracy Count.**

As part of his plea agreement, the conspiracy count of the Third Superseding Indictment was dropped as against Jefferies.  Calloway urged that his counsel was ineffective for failing to seek dismissal of the conspiracy count as against him also.  The magistrate judge construed this argument as urging that the dismissal of a charge against one co-conspirator required the dismissal of the same charge as to the other co-conspirators.  The magistrate judge found that the evidence against Calloway was overwhelming and dismissal of the charge was not required.

Calloway contends that the magistrate judge misconstrued his argument.  He urges that dismissal of the conspiracy count was mandated because the indictment did not charge Calloway with entering into an agreement with anyone to possess cocaine with the intent to distribute it.  Calloway's contention is off base, as Count 1 charges "Ronald E. Jefferies, Rickey Calloway, and Luciana Meadoweal, knowingly conspired with each other and others known and unknown to the Grand Jury, to knowingly and intentionally possess with intent to distribute five kilograms or more of…cocaine."  (DN 194).   Thus Count 1 clearly states that Calloway, Jefferies, Meadoweal and others conspired to traffic in cocaine.  Nothing more need be alleged.  A "conspiracy," by definition, is an agreement or a kind of "partnership" in criminal purposes in which each member becomes the agent or partner of every other member.  As explained in the jury instructions, "So, if a defendant has an understanding of the unlawful nature of a plan and knowingly joins in that plan on one occasion, that is sufficient to convict that defendant for conspiracy…It is not necessary for the United States to prove that all of the people in the indictment were members of the scheme, or that those who were members had entered into any

formal type of agreement."  (DN 221, p. 7).  Calloway's counsel was not deficient in failing to seek dismissal of Count 1 as to him.


**H.  Meadoweal's Jailhouse Phone Calls.**

Calloway objects to the magistrate judge's finding that counsel was not ineffective for failing to challenge the admissibility of Meadoweal's jailhouse recorded phone calls.   The magistrate judge concluded that Calloway had no standing to challenge the admissibility of the phone calls to which he was not a party.   Further, the magistrate judge noted that prior to connecting each call, Meadoweal was advised by recorded message that her call was being recorded, and she voluntarily continued the calls.   A consensually recorded conversation does not violate the Wiretap Act.

Calloway further objects, urging that the government failed to establish the admissibility of these recordings under Fed.R.Evid. 803(6).  As noted earlier herein, evidence offered to link a defendant to a place, person, or item is not hearsay.  The Sixth Circuit stated that "a substantial foundation was laid to link Calloway to that cell phone number, even if not to the cell phone itself.  From prison, Meadoweal called her daughter and asked her if she knew 'Rick's' number.  Her daughter then provided the number 502-457-2630."  As the Sixth Circuit has indicated that the evidence was offered for a non-hearsay purpose and Calloway has not indicated otherwise, Fed.R.Evid. 803(6) is inapplicable.  The magistrate judge correctly found that counsel was not ineffective, as such an argument concerning admissibility of this evidence would have been futile.

**I.  Speedy Trial Act.**

The magistrate judge correctly determined that there was no ineffective assistance of counsel in failing to seek dismissal of the "indictment" when Calloway was not brought to trial within the time constraints of the Speedy Trial Act, 18 U.S.C. § 3161.  The original indictment in this case was superseded three times, each time adding and/or altering charges and defendants. This court declared the case complex, and it appropriately progressed to trial outside the bounds of the Speedy Trial Act.  The Sixth Circuit also noted the complex facts underlying the final nine-count Third Superseding Indictment.  Calloway has offered nothing in his objections to the magistrate judge's Report other than to state that he was under the impression that counsel had moved for a speedy trial.  Requesting a trial within the statutory speedy trial period and entitlement to one are entirely separate questions.  As a request for a speedy trial or a demand for dismissal of the indictment would have been futile acts in the face of the superseding indictments and the complexity of the case, there was no ineffective assistance here.

**J.  Attempt (Counts 2 and 4).**

Calloway urged somewhat cryptically in his petition that

The petitioner received ineffective assistance of counsel when no motion was made to dismiss Count 2 and 4, of the indictment following the dismissal of those same counts against co-defendant Ron Jeffries [sic].  There existed no foundation to continue the prosecution of this petitioner when the Government dismissed those counts against Ron Jeffries [sic], nor did a basis exists [sic] for introducing them as evidence of any alleged cconspiracy [sic] (Count One), since, it was an element of the offenses that the culpability of Ron Jeffries [sic] be demonstrated and proven beyond a reasonable doubt, and this was not accomplished by the prosecution.

(DN 364-1, p. 1).

The magistrate judge rejected Calloway's claim of ineffective assistance, noting accurately that to convict him of these charges of attempt to possess with intent to distribute required only proof of a substantial step toward completion of the offense.  A "substantial step" includes "conduct strongly corroborative of the firmness of the defendant's criminal intent." *United States v. Shelton*, 30 F.3d 702, 705 (6th Cir. 1994).  The magistrate judge concluded that there is no question that the United States fully satisfied its burden of proof as to Counts 2 and 4 of the Third Superseding Indictment, again referring to the Sixth Circuit's recitation of the "overwhelming" evidence offered in support of Calloway's conviction.

In his objections, Calloway contends that he had exculpatory evidence that would have proved that he did not take a "substantial step," but that his counsel failed to offer it and therefore, as there would have been no evidence of a substantial step, his counsel was ineffective in failing to move for dismissal of the "conspiracy count."  To the extent that these counts do not charge conspiracy, the objection is misguided.  To the extent that he asserts that his purported exculpatory evidence would have negated any evidence that he took a "substantial step" toward completion of the drug trafficking offense, the court refers first to the section herein which addresses this purported exculpatory evidence.  The magistrate judge correctly found that there was no ineffective assistance of counsel in the failure to seek dismissal of counts 2 and 4 of the Third Superseding Indictment.

**K.  Tax Returns.**

The magistrate judge found that the admission of Calloway's tax returns was proper to demonstrate that the disparity between Calloway's stated income and the amounts seized by law enforcement during the investigation, citing various cases establishing that unexplained wealth is

relevant in a narcotics prosecution as evidence indicative of illegal dealings.   Calloway's objection that the United States did not show that he was living an extravagant lifestyle does not call into question the clear admissibility of this evidence.   As the magistrate judge found, there was no ineffectiveness in failing to challenge the admissibility of Calloway's tax returns at trial.

**L.  Alibi Instruction.**

This is a rehash of the argument addressed earlier in this opinion.

**M.  Overt Act.**

Calloway contends that counsel was ineffective for failing to seek dismissal of Count 1 of the Third Superseding Indictment, the conspiracy charge, for failing to allege an overt act.  He argues in his petition that although there is no requirement that an overt act be charged in a drug conspiracy count, he urges that "that principle was inapplicable herein because there was no proof introduced about the existence of an agreement to possess cocaine with the intent to distribute it." (DN 364-1, p. 4).

The magistrate judge concluded that no legitimate ground existed for counsel to have requested dismissal based on an alleged failure of the United States' proof at trial, noting that there was a plethora of proof of Calloway's actions underscoring his substantial involvement in the drug conspiracy.  He cited the Sixth Circuit's finding of strong circumstantial evidence of the existence of a conspiracy and Calloway's membership in that conspiracy.  The magistrate judge recounted proof: (1) that Calloway accompanied Meadoweal to Texas, driving in a separate vehicle, (2) Meadoweal's efforts to contact Calloway after being arrested with cocaine and cash

in the Lincoln Town Car, and (3) the presence of a legal contract in Calloway's home for Shirley's representation on drug charges from an earlier, similar transportation of cocaine.

Calloway simply restates, incorrectly, in his objection that the conspiracy claim was fatally defective for failing to charge the commission of an overt act. *See, United States v. Shabani*, 115 S.Ct. 382 (1994). This contention is wholly without merit. Therefore, there was similarly no ineffectiveness by Calloway's counsel in failing to raise this argument.

**N.  Plea Negotiations.**

Calloway argued that his counsel was ineffective for failing to engage in plea negotiations with federal prosecutors. The magistrate judge found that although he initially indicated that counsel failed to engage in negotiations, Calloway admitted in his reply brief that counsel brought him at least one plea offer from the United States which he indicated he would not accept unless it was "guaranteed." So, in fact, it appears that counsel did not abdicate his duties, but rather, Calloway did not receive the plea deal he wanted. Thus there was no failure of counsel in his duties under *Missouri v. Frye*, 132 S.Ct. 1399 (2012) to communicate formal plea offers from the prosecution before such offers expire.

Calloway offers nothing new in his objections to the magistrate judge's Report. He points to his second affidavit supplied with his reply brief in which he states that, without first discussing it with the United States, counsel told him he could not receive a "(c) plea" and that his best chance was to go to trial. This contradicts both defense attorney Zorin's sworn statement and Calloway's own reply brief in which he states that counsel did bring him a plea offer which he rejected as not "guaranteed." (DN 410, p. 36).

We find no error in the magistrate judge's determination that counsel was not ineffective with respect to plea negotiations.

## O.  Aiding and Abetting (Counts 3 and 5).

Calloway urges that the court's aiding and abetting instruction "robbed" him of his alibi defense, and his counsel was thus ineffective for failing to object to it.

The magistrate judge correctly noted that because Calloway was charged with aiding and abetting travel in interstate commerce to commit the offense of possession with intent to distribute cocaine, the jury was not required to believe that Calloway himself in fact accompanied Meadoweal to Texas in order to convict him of aiding and abetting the Travel Act violations charged in Counts 3 and 5.  Therefore, the magistrate judge concluded that any argument by counsel that the aiding and abetting instruction was improper due to a lack of evidence that Calloway accompanied Meadoweal would have been pointless.  This court agrees that there was no ineffectiveness by counsel in failing to object to the aiding and abetting instruction.

Calloway urges in his objections that since he had an alibi witness who was willing to testify that Calloway had no knowledge of any travel plans of Meadoweal and Shirley, he could not be found to have aided and abetted the commission of a travel act crime.  We refer to the earlier discussion herein of the alibi defense.

## P.  Testimony of Special Agent Tremaine.

Agent Tremaine testified at trial that he recognized the voice on certain recorded jailhouse phonecalls with Meadoweal as Calloway's.  He offered this opinion based upon having

heard Calloway's voice in the past.  The magistrate judge determined that Tremaine was not offered as an expert witness nor was his opinion an expert opinion.  Rather, his opinion was a lay opinion under Fed.R.Evid. 701(a).  Calloway maintains in his objections that Tremaine did, in fact, testify as an expert, and again states that the jailhouse calls themselves were inadmissible.

With respect to the admissibility of the recorded calls, we have addressed this argument earlier herein.  As for the reiterated argument that Tremaine testified as an expert and that his counsel should have objected to it, Calloway offers nothing to suggest that Tremaine's opinion was anything more than a lay opinion based upon his having heard Calloway's voice in the past. Calloway's contention that his counsel was ineffective in making this argument is meritless.


**Q. Threats Against Witness.**

The owner of the body shop where the hidden compartment was installed in the Lincoln Town Car was threatened at gunpoint that he would be killed if he testified against the defendants.  The Sixth Circuit determined on direct appeal that there was no direct evidence linking Calloway to the threat, and the evidence was improperly admitted against him.  The Sixth Circuit determined, however, that there was no plain error, as (1) the discussion of the threat was confined to less than one page out of a 1,000-page trial transcript, and (2) the evidence linking Calloway to the drug conspiracy was so overwhelming that this evidence could not have affected the outcome of the trial.  (DN 321, pp. 16-17).  The magistrate judge thus concluded similarly that counsel was not ineffective for having failed to challenge the admittedly erroneous admission of the threat evidence as it did not create a reasonable probability that the outcome of the proceedings would have been any different, citing the *Strickland* standard.

Calloway's objection to this conclusion is that had he been provided a "complete defense" and additional alibi witnesses had been called, the evidence against him would not have been "overwhelming" and there would have been a reasonable probability of a different outcome in the case.

The argument is dependent upon the court's treatment of the alibi evidence and thus is discussed elsewhere in the opinion.  The magistrate judge correctly found that there was no ineffective assistance of counsel under *Strickland*.


**R.  Prosecutor's Statements.**

The prosecutor argued at trial that the cellphone found on his person at the time of his arrest had the assigned phone number that Meadoweal called following her arrest in Louisiana. Calloway argued on direct appeal that no foundation was laid to establish a connection between the phone and the phone number.  The Sixth Circuit found that a substantial foundation was laid linking the cell phone, the number, and Calloway.  The Sixth Circuit noted that Meadoweal called her daughter from prison asking for "Rick's" number, and that she provided the number associated with the cell phone.  That number was tracked, moving south from Louisville to the Houston area, and that cell phone number was written on Calloway's luggage tag found in his home.

Calloway urges in his § 2255 petition that his attorney was ineffective for failing to object to testimony which referred to the cell phone number as one associated with the cell phone in Calloway's possession.  However, the magistrate judge correctly concluded that such an objection would have been unsuccessful in light of the foundational evidence recited by the Sixth Circuit.

In his objections Calloway once again refers to the post-trial offer of alibi evidence which he claims would establish that Calloway "never had the phone on him at all" and he would have been acquitted.  This offer of additional alibi evidence is addressed elsewhere in this opinion. Calloway raises nothing beyond this argument to challenge the magistrate judge's findings on this point.

**S.  Travel Act Counts (Counts 3 and 5).**

Calloway urges that his counsel was ineffective for failing to move for dismissal of the charges for aiding and abetting violation of the Travel Act, as the United States proved, at best, nothing more than sporadic activity.  The magistrate judge concluded that the evidence at trial offered far more than sporadic activity.  Rather, the evidence connected Calloway to two interdicted trips transporting large amounts of cash and cocaine from Texas to Louisville.  The magistrate judge noted that the jury was properly instructed that to convict on a Travel Act count, the jury must find proof beyond a reasonable doubt of a continuous course of conduct or series of transactions for the purpose of profit rather than casual, sporadic, or isolated activity. Calloway was convicted on those counts on such proof.  A motion seeking dismissal of the Travel Act charges would have been futile.

Calloway merely states in his objections to the magistrate judge's Report that he stands by his arguments made in his § 2255 petition.

**T.  Attempted Possession (Counts 2 and 4).**

The magistrate judge addressed the argument made in Calloway's petition that it was impermissible to find that Calloway had the requisite specific intent to possess cocaine from the

mere fact of Meadoweal's or Shirley's possession.  He argued that the government did not put on proof establishing knowledge by either of these co-conspirators, and therefore there was nothing more than their "mere proximity" to the drugs and cash.  Calloway thus urged that his counsel was deficient in failing to seek dismissal of Counts 2 and 4.

The magistrate judge noted that Counts 2 and 4 did not require the United States to prove actual or constructive possession of the cocaine, as these counts charged Calloway with attempted possession.  All that was required was evidence of Calloway's substantial step toward his possession of the cocaine which was accomplished through introduction of the cell phone tower proof and the Love's Country Store receipt supporting the theory that Calloway accompanied Meadoweal on the December trip to Texas.

Calloway's objection, while a bit difficult to discern, appears to merely restate his earlier argument.  He states:

> Calloway objects to the RMJ that, counsel was not ineffective for failing to seek dismissal of Counts 2 and 4, on the grounds that the government's theory of the case suspects Calloway of being guilty of constructive possession as opose [sic] to the substantive offense of attempted possession.  Calloway could not have been found guilty of attempted to possess [sic] when according to the government's own theory, he had constructive possession from the beginning.

Calloway contends that he could not simultaneously be guilty of attempt to possess and constructive possession of cocaine.  The magistrate judge's analysis addressed this point, concluding that because only an attempted possession was charged, the United States did not have to prove actual or constructive possession of the cocaine seized.  To the extent that urges that the proof suggested that he constructively possessed the cocaine found with Meadoweal and Shirley, such proof would also support an attempt to possess which was successful.  Calloway's objection is therefore without merit.

**U. Calloway's Arrest.**

Calloway contends that his arrest was unlawful and therefore his attorney was ineffective for failing to move for suppression of all of the items and statements obtained from him. He urges that the police did not have an arrest warrant, no felony was committed in the officers' presence, and they were investigating events which occurred in another state, so they could not arrest and charge him for drug crimes. Nothing could be further from the truth.

The magistrate judge found that the warrantless arrest of Calloway following the search of his Oakburn Drive home was supported by probable cause. The arresting officers were aware that Calloway was a convicted felon. Two firearms were found hidden in the master bedroom closet of the home. The officers therefore had clear grounds to arrest Calloway for being a convicted felon in possession of a firearm. In turn, the items seized as a result of the search incident to his lawful arrest would not have been suppressed, had counsel so moved. As such a motion would have lacked merit, counsel was not ineffective for failing to have made the motion.

Calloway's objection to the magistrate judge's analysis adds nothing new to challenge this well-reasoned conclusion.

**V.  Admission of Documents.**

In this section, Calloway restates his earlier argument that various items of evidence such as wire transfer slips, an attorney representation agreement, tax records, a luggage tag, airline tickets, Western Union forms, and bank records were admitted into evidence without the laying of a proper foundation under Fed.R.Evid. 803(6). For the reasons stated in the earlier discussion

of this issue, these items were not hearsay and therefore not admitted pursuant to Rule 803(6). The items were properly admitted against Calloway.  Counsel was not ineffective for failing to make an argument for exclusion of this evidence.  Calloway's objection to the magistrate judge's conclusion offers nothing additional.


**W.  Cumulative Attorney Errors.**

Calloway urges that the many errors by his ineffective counsel denied him a fair trial and due process of law.  The magistrate judge correctly concluded that this contention of cumulative error is meritless, as no multiplicity of errors has been found and Calloway received a fundamentally fair trial.  His objection is merely a restatement of this argument.


**X.  Taking Without Just Compensation.**

Calloway demands that certain property and $80,000 in cash seized from the hidden compartment of the Lincoln Town Car driven by Meadoweal be returned to him.  The magistrate judge correctly noted that this argument may not be considered in the context of a motion to vacate under 28 U.S.C. § 2255.  *See, McGee v. United States*, 2010 WL 310770 at *2 (W.D.Mich. Jan. 21, 2010).

Calloway states in his objections that this court should make an exception and consider his argument.  The court has no basis for doing so, and Calloway has cited no authority in support of his position.


**Y.  Unlawful Sentence Enhancement.**

Calloway was sentenced as a "career offender" pursuant to 21 U.S.C. § 841(b)(1)(A).  On direct appeal, he challenged the sentence enhancement on the ground that he was entitled to have a jury determine whether two prior drug trafficking convictions were sufficient to support the "career offender" status.  The Sixth Circuit found that Calloway's life sentence was not imposed contrary to law.  The magistrate judge found that because this issue was raised and addressed on direct appeal, Calloway may not have a "second bite of the apple" via a § 2255 motion.

In his objections, Calloway urges that *Alleyne v. United States*, 133 S.Ct. 2151(2013) required that his prior convictions be submitted to a jury before his sentence could be enhanced. However, the magistrate judge cited to *United States v. Nagy*, No. 3-4151, 2014 WL 3632362 (6th Cir. July 24, 2014) which rejected that very argument:

> Contrary to Nagy's assertion, *Alleyne* does not stand for the proposition that a defendant's prior convictions must be submitted to a jury and proven beyond a reasonable doubt, even when the fact of those convictions increases the mandatory minimum sentence for a crime. *Alleyne* overruled the distinction that the Court drew in *Harris v. United States,* 536 U.S. 545, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002), between facts that increase the statutory maximum and facts that increase only the mandatory minimum. The Court in *Alleyne* concluded that such a distinction is "inconsistent with *Apprendi*['s]" requirement that any fact, "other than the fact of a prior conviction," *Apprendi,* 530 U.S. at 490, 120 S.Ct. 2348, that increases the penalty for a crime beyond the statutory maximum be submitted to a jury and proven beyond a reasonable doubt. *Alleyne,* 133 S.Ct. at 2163. *Apprendi,* therefore, preserved the Court's earlier ruling in *Almendarez–Torres* that a prior conviction is not "an element of the related crime" that must be submitted to a jury and proven beyond a reasonable doubt. *Almendarez–Torres,* 523 U.S. at 246–47, 118 S.Ct. 1219. *Alleyne* states that "any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury"; but the Court in *Alleyne* explicitly declined to overrule *Almendarez–Torres* ' "narrow exception to this general rule for the fact of a prior conviction." *Alleyne,* 133 S.Ct. at 2155, 2160 n. 1.

*United States v. Nagy*, 760 F.3d 485, 488 (6th Cir. 2014), *cert. denied,* 135 S. Ct. 1009, 190 L. Ed. 2d 881 (2015).  Thus Calloway's argument is without merit.

~ 30 ~

**Z. Evidentiary Hearing.**

The magistrate judge properly found that no genuine issue of material fact exists warranting an evidentiary hearing.

An evidentiary hearing is not warranted where the defendant's allegations cannot be accepted as true because they are contradicted by the record, are inherently incredible, or are conclusions rather than statements of fact. *Arrendono v. United States*, 178 F.3d 778, 782 (6th Cir. 1999). None of the challenges addressed herein call into question the substantial sum of evidence offered against Calloway at trial. This court agrees with the magistrate judge that no hearing is necessary.

**AA.  Certificate of Appealability.**

The magistrate judge found that despite Calloway's many claims of evidentiary error and ineffective assistance of counsel, Calloway failed to make a substantial showing of the denial of a federal constitutional or statutory right. The magistrate judge found his claims to be without merit, many of which were conclusory, based upon a fundamental misunderstanding of the law, or wholly refuted by the record. The court agrees. Jurists of reason would not find debatable whether Calloway's petition states a valid constitutional claim or whether various claims are procedurally barred. *Porterfield v. Bell*, 258 F.3d 484, 485-86 (6th Cir. 2001); 28 U.S.C. § 2253(c)(2).

**BB.  Conclusion.**

For the reasons cited herein, the Findings of Fact, Conclusions of Law, and Recommendation of the United States Magistrate Judge will be accepted and adopted in its

entirety with the exception of the last paragraph on page 22.  Calloway's petition will be dismissed with prejudice.  A separate order will be entered herein this date in accordance with this opinion.

**IT IS SO ORDERED.**

May 31, 2016

**Charles R. Simpson III, Senior Judge**
**United States District Court**

cc:     Counsel of Record
        Rickey Calloway, *pro se*